# IN RE R. M. J.

No 80–1431.   Argued November 9, 1981—Decided January 25, 1982

192

POWELL, J., delivered the opinion for a unanimous Court.

*Charles B. Blackmar* argued the cause for appellant. With him on the briefs were *Charles A. Blackmar, Bruce J. Ennis,* and *Charles S. Sims.*

*John W. Inglish* argued the cause and filed a brief for appellee.*

---

*Thomas Lumbard* and *Harry M. Philo* filed a brief for the Association of Trial Lawyers of America as *amicus curiae* urging reversal.

*Jerry L. Zunker* filed a brief for the State Bar of Texas as *amicus curiae.*

JUSTICE POWELL delivered the opinion of the Court.

The Court's decision in *Bates* v. *State Bar of Arizona*, 433 U. S. 350 (1977), required a re-examination of long-held perceptions as to "advertising" by lawyers. This appeal presents the question whether certain aspects of the revised ethical rules of the Supreme Court of Missouri regulating lawyer advertising conform to the requirements of *Bates*.

I

As with many of the States, until the decision in *Bates*, Missouri placed an absolute prohibition on advertising by lawyers.[1] After the Court's invalidation of just such a prohibition in *Bates*, the Committee on Professional Ethics and Responsibility of the Supreme Court of Missouri revised that court's Rule 4 regulating lawyer advertising. The Committee sought to "strike a midpoint between prohibition and unlimited advertising,"[2] and the revised regulation of advertising, adopted with slight modification by the State Supreme Court, represents a compromise. Lawyer advertising is permitted, but it is restricted to certain categories of information, and in some instances, to certain specified language.

---

[1] Prior to the 1977 revision, Rule 4 provided in pertinent part:

"(A) A lawyer shall not prepare, cause to be prepared, use, or participate in the use of, any form of public communication that contains professionally self-laudatory statements calculated to attract lay clients; as used herein, 'public communication' includes, but is not limited to, communication by means of television, radio, motion picture, newspaper, magazine, or book. "(B) A lawyer shall not publicize himself, his partner, or associate as a lawyer through newspaper or magazine advertisements, radio or television announcements, display advertisements in city or telephone directories, or other means of commercial publicity, nor shall he authorize or permit others to do so in his behalf . . . ." Mo. Sup. Ct. Rules Ann., Rule 4, DR 2-101, p. 63 (Vernon 1981) (historical note).

[2] Report of Committee to Chief Justice of Supreme Court of Missouri (Sept. 9, 1977), reprinted in App. A-30.

Thus, part B of DR 2–101 of the Rule states that a lawyer may "publish . . . in newspapers, periodicals and the yellow pages of telephone directories" 10 categories of information: name, address and telephone number; areas of practice; date and place of birth; schools attended; foreign language ability; office hours; fee for an initial consultation; availability of a schedule of fees; credit arrangements; and the fixed fee to be charged for certain specified "routine" legal services.[3] Although the Rule does not state explicitly that these 10 categories of information or the 3 indicated forms of printed advertisement are the only information and the only means of advertising that will be permitted,[4] that is the interpretation given the Rule by the State Supreme Court and the Advisory Committee[5] charged with its enforcement.

In addition to these guidelines, and under authority of the Rule, the Advisory Committee has issued an addendum to the Rule providing that if the lawyer chooses to list areas of

---

[3] The 10 listed "routine" services are: an uncontested dissolution of marriage; an uncontested adoption; an uncontested personal bankruptcy; an uncomplicated change of name; a simple warranty or quitclaim deed; a simple deed of trust; a simple promissory note; an individual Missouri or federal income tax return; a simple power of attorney; and a simple will. Mo. Rev. Stat., Sup. Ct. Rule 4, DR 2–101(B) (1978) (Index Vol.). The Rule authorizes the Advisory Committee to approve additions to this list of routine services. *Ibid.*

[4] Indeed, on its face, the Rule would appear to suggest that its specific provisions are intended only to provide a safe harbor, and not to prohibit all other forms of advertising or categories of information. This impression is conveyed by the Rule's inclusion of a general prohibition on misleading advertising in DR 2–101(A):

"A lawyer shall not, on behalf of himself, his partner, associate or any other lawyer affiliated with him or his firm, use or participate in the use of any form of public communication respecting the quality of legal services or containing a false, fraudulent, misleading, deceptive, self-laudatory or unfair statement or claim." Rule 4, DR 2–101(A).

[5] The Advisory Committee is a standing committee of the Supreme Court of Missouri and is responsible for prosecuting disciplinary proceedings and for giving formal and informal opinions on the Canons of Professional Responsibility. See Rule 5.

practice in his advertisement, he must do so in one of two prescribed ways. He may list one of three general descriptive terms specified in the Rule—"General Civil Practice," "General Criminal Practice," or "General Civil and Criminal Practice." Alternatively, he may use one or more of a list of 23 areas of practice, including, for example, "Tort Law," "Family Law," and "Probate and Trust Law." He may not list both a general term and specific subheadings, nor may he deviate from the precise wording stated in the Rule. He may not indicate that his practice is "limited" to the listed areas and he must include a particular disclaimer of certification of expertise following any listing of specific areas of practice.[6]

---

[6] The addendum to the rule promulgated by the Advisory Committee provided in relevant part as follows:

"[T]he following areas for fields of law may be advertised by use of the specific language hereinafter set out:
1. 'General Civil Practice'
2. 'General Criminal Practice'
3. 'General Civil and Criminal Practice.'

"If a lawyer or law firm uses one of the above, no other area can be used . . . . If one of the above is *not* used, then a lawyer or law firm can use one or more of the following:
1. 'Administrative Law'
2. 'Anti-Trust Law'
3. 'Appellate Practice'
4. 'Bankruptcy'
5. 'Commercial Law'
6. 'Corporation Law and Business Organizations'
7. 'Criminal Law'
8. 'Eminent Domain Law'
9. 'Environmental Law'
10. 'Family Law'
11. 'Financial Institution Law'
12. 'Insurance Law'
13. 'International Law'
14. 'Labor Law'
15. 'Local Government Law'

Finally, one further aspect of the Rule is relevant in this case. DR 2–102 of Rule 4 regulates the use of professional announcement cards. It permits a lawyer or firm to mail a dignified "brief professional announcement card stating new or changed associates or addresses, change of firm name, or similar matters." The Rule, however, does not permit a general mailing; the announcement cards may be sent only to "lawyers, clients, former clients, personal friends, and relatives."[7] Mo. Rev. Stat., Sup. Ct. Rule 4, DR 2–102(A)(2) (1978) (Index Vol.).

## II

Appellant graduated from law school in 1973 and was admitted to the Missouri and Illinois Bars in the same year. After a short stint with the Securities and Exchange Commission in Washington, D. C., appellant moved to St. Louis, Mo., in April 1977, and began practice as a sole practitioner. As a means of announcing the opening of his office, he mailed professional announcement cards to a selected list of addressees. In order to reach a wider audience, he placed several advertisements in local newspapers and in the yellow pages of the local telephone directory.

The advertisements at issue in this litigation appeared in January, February, and August 1978, and included informa-

---

16. 'Military Law'
17. 'Probate and Trust Law'
18. 'Property Law'
19. 'Public Utility Law'
20. 'Taxation Law'
21. 'Tort Law'
22. 'Trial Practice'
23. 'Workers Compensation Law.'

No deviation from the above phraseology will be permitted and no statement of limitation of practice can be stated.

"If one or more of these specific areas of practice are used in any advertisement, the following statement must be included . . . :

'Listing of the above areas of practice does not indicate any certification of expertise therein.'" Rule 4, Addendum III (Adv. Comm. Nov. 13, 1977).

[7] This provision of Rule 4 was not altered by the 1977 amendments.

tion that was not expressly permitted by Rule 4. They included the information that appellant was licensed in Missouri and Illinois. They contained, in large capital letters, a statement that appellant was "Admitted to Practice Before THE UNITED STATES SUPREME COURT." And they included a listing of areas of practice that deviated from the language prescribed by the Advisory Committee—*e. g.*, "personal injury" and "real estate" instead of "tort law" and "property law"—and that included several areas of law without analogue in the list of areas prepared by the Advisory Committee—*e. g.*, "contract," "zoning & land use," "communication," "pension & profit sharing plans."* See n. 6, *supra.* In addition, and with the exception of the advertisement appearing in August 1978, appellant failed to include the required disclaimer of certification of expertise after the listing of areas of practice.

On November 19, 1979, the Advisory Committee filed an information in the Supreme Court of Missouri charging appel-

---

* In an advertisement published in the August 1978 yellow pages for St. Louis, and typical of appellant's other advertisements, appellant included a listing of 23 areas of practice. Four of the areas conformed to the language prescribed in the Rule—"bankruptcy," "anti-trust," "labor," and "criminal." Eleven of the areas deviated from the precise language of the Rule—"tax," "corporate," "partnership," "real estate," "probate," "wills, estate planning," "personal injury," "trials & appeals," "workmen's compensation," "divorce-separation," and "custody-adoption," instead of, respectively, and as required by the Rule, "taxation law," "corporation law and business organizations," "property law," "probate & trust law," "tort law," "trial practice," "appellate practice," "workers compensation law," and "family law." Eight other areas listed in the advertisement are not listed in any manner by the Advisory Committee's addendum: "contract," "aviation," "securities-bonds," "pension & profit sharing plans," "zoning & land use," "entertainment/sports," "food, drug & cosmetic," and "communication."

A photograph of the advertisements as they appeared in the St. Louis, Suburban West, Telephone Directory for February 1978, and in the January/February 1978 issue of the West End Word is reproduced as an Appendix to this opinion. In all of appellant's advertisements the statement as to his membership in the Bar of the United States Supreme Court was printed conspicuously in large capital letters.

lant with unprofessional conduct. The information charged appellant with publishing three advertisements that listed areas of law not approved by the Advisory Committee, that listed the courts in which appellant was admitted to practice, and, in the case of two of the advertisements, that failed to include the required disclaimer of certification. The information also charged appellant with sending announcement cards to "persons other than lawyers, clients, former clients, personal friends, and relatives" in violation of DR 2–102(A)(2). In response, appellant argued that, with the exception of the disclaimer requirement, each of these restrictions upon advertising was unconstitutional under the First and Fourteenth Amendments.

In a disbarment proceeding, the Supreme Court of Missouri upheld the constitutionality of DR 2–101 of Rule 4 and issued a private reprimand. 609 S. W. 2d 411 (1981). But the court did not explain the reasons for its decision, nor did it state whether it found appellant to have violated each of the charges lodged against him or only some of them. Indeed, the court only purported to uphold the constitutionality of DR 2–101; it did not mention the propriety of DR 2–102, which governs the use of announcement cards.

Writing in separate dissenting opinions, Chief Justice Bardgett and Judge Seiler argued that the information should be dismissed. The dissenters suggested that the State did not have a significant interest either in requiring the use of certain, specified words to describe areas of practice or in prohibiting a lawyer from informing the public as to the States and courts in which he was licensed to practice. Nor would the dissenters have found the mailing of this sort of information to be unethical.[9]

---

[9]The dissenting judges differed in several respects. Chief Justice Bardgett considered that appellant's listing of the fact that he was admitted to practice before the United States Supreme Court was not improper; Judge Seiler argued that this information was more misleading than helpful. Moreover, Judge Seiler argued that appellant should not be penalized

## III

In *Bates* v. *State Bar of Arizona*, 433 U. S. 350 (1977), the Court considered whether the extension of First Amendment protection to commercial speech announced in *Virginia Pharmacy Board* v. *Virginia Citizens Consumer Council*, 425 U. S. 748 (1976), applied to the regulation of advertising by lawyers.[10] The *Bates* Court held that indeed lawyer advertising was a form of commercial speech, protected by the First Amendment, and that "advertising by attorneys may not be subjected to blanket suppression." 433 U. S., at 383.

More specifically, the *Bates* Court held that lawyers must be permitted to advertise the fees they charge for certain "routine" legal services. The Court concluded that this sort of price advertising was not "inherently" misleading, and therefore could not be prohibited on that basis. The Court also rejected a number of other justifications for broad restrictions upon advertising including the potential adverse effect of advertising on professionalism, on the administration

---

for having omitted a disclaimer of certification when the addendum requiring the disclaimer was not available until after appellant had placed the advertisements and after it was too late to add the disclaimer. Chief Justice Bardgett's dissent omits any mention of appellant's failure to include a disclaimer. See n. 18, *infra*. Finally, Chief Justice Bardgett expressed his belief that our decision in *Central Hudson Gas & Electric Corp.* v. *Public Service Comm'n*, 447 U. S. 557 (1980), concerning the regulation of commercial speech, does not apply in its entirety to the regulation of lawyer advertising. Judge Seiler appeared to take the opposite position. Both of the dissenting opinions reflect a thoughtful examination of the charges made against appellant.

[10] The Court in *Virginia Pharmacy*, expressly reserved this question:

"We stress that we have considered in this case the regulation of commercial advertising by pharmacists. Although we express no opinion as to other professions, the distinctions, historical and functional, between professions, may require consideration of quite different factors. Physicians and lawyers, for example, do not dispense standardized products; they render professional *services* of almost infinite variety and nature, with the consequent enhanced possibility for confusion and deception if they were to undertake certain kinds of advertising." 425 U. S., at 773, n. 25.

of justice, and on the cost and quality of legal services, as well as the difficulties of enforcing standards short of an outright prohibition. None of these interests was found to be sufficiently strong or sufficiently affected by lawyer advertising to justify a prohibition.

But the decision in *Bates* nevertheless was a narrow one. The Court emphasized that advertising by lawyers still could be regulated.[11] False, deceptive, or misleading advertising remains subject to restraint,[12] and the Court recognized that advertising by the professions poses special risks of deception—"because the public lacks sophistication concerning legal services, misstatements that might be overlooked or deemed unimportant in other advertising may be found quite inappropriate in legal advertising." *Ibid.* (footnote

---

[11] Even as to price advertising, the Court suggested that some regulation would be permissible. For example, the bar may "define the services that must be included in an advertised package . . . ." 433 U. S., at 373, n. 28, and the bar could require disclaimers or explanations to avoid false hopes, *id.*, at 384 ("[S]ome limited supplementation, by way of warning or disclaimer or the like, might be required of even an advertisement of the kind ruled upon today so as to assure that the consumer is not misled").

Presumably, too, the bar may designate the services that may be considered "routine." Moreover, the Court might reach a different decision as to price advertising on a different record. If experience with particular price advertising indicates that the public is in fact misled or that disclaimers are insufficient to prevent deception, then the matter would come to the Court in an entirely different posture. The commercial speech doctrine is itself based in part on certain empirical assumptions as to the benefits of advertising. If experience proves that certain forms of advertising are in fact misleading, although they did not appear at first to be "inherently" misleading, the Court must take such experience into account. Cf. *Bates* v. *State Bar of Arizona*, 433 U. S., at 372 ("We are not persuaded that restrained professional advertising . . . will be misleading").

[12] See *Friedman* v. *Rogers*, 440 U. S. 1, 11, n. 9 (1979) ("When dealing with restrictions on commercial speech we frame our decisions narrowly, 'allowing modes of regulation [of commercial speech] that might be impermissible in the realm of noncommercial expression'" (quoting *Ohralik* v. *Ohio State Bar Assn.*, 436 U. S. 447, 456 (1978)); *Virginia Pharmacy*

omitted). The Court suggested that claims as to quality or in-person solicitation might be so likely to mislead as to warrant restriction. And the Court noted that a warning or disclaimer might be appropriately required, even in the context of advertising as to price, in order to dissipate the possibility of consumer confusion or deception.[13] "[T]he bar retains the power to correct omissions that have the effect of presenting an inaccurate picture, [although] the preferred remedy is more disclosure, rather than less." *Id.*, at 375.[14]

---

*Board* v. *Virginia Citizens Consumer Council*, 425 U. S., at 771–772, and n. 24 ("Untruthful speech, commercial or otherwise, has never been protected for its own sake. . . . Obviously, much commercial speech is not provably false, or even wholly false, but only deceptive or misleading. We foresee no obstacle to a State's dealing effectively with this problem. The First Amendment, as we construe it today, does not prohibit the State from insuring that the stream of commercial information flow cleanly as well as freely") (citations and footnote omitted).

[13] In addition, the *Bates* Court noted that reasonable restrictions on the time, place, and manner of advertising would still be permissible, while "the special problems of advertising on the electronic broadcast media will warrant special consideration." 433 U. S., at 384.

[14] The Model Rules of Professional Conduct proposed by the American Bar Association Commission on Evaluation of Professional Standards provide that "a lawyer may advertise services through public media, such as a telephone directory, legal directory, newspaper or other periodical, radio or television, or through written communication not involving personal contact." Rule 7.2(a). Rule 7.1 prohibits misleading advertising in the following terms:

"A lawyer shall not make any false or misleading communication about the lawyer or the lawyer's services. A communication is false or misleading if it:

"(a) contains a material misrepresentation of fact or law, or omits a fact necessary to make the statement considered as a whole not materially misleading;

"(b) is likely to create an unjustified expectation about results the lawyer can achieve, or states or implies that the lawyer can achieve results by means that violate the Rules of Professional Conduct or other law; or

"(c) compares the lawyer's services with other lawyers' services, unless the comparison can be factually substantiated."

In short, although the Court in *Bates* was not persuaded that price advertising for "routine" services was necessarily or inherently misleading, and although the Court was not receptive to other justifications for restricting such advertising, it did not by any means foreclose restrictions on potentially or demonstrably misleading advertising. Indeed, the Court recognized the special possibilities for deception presented by advertising for professional services. The public's comparative lack of knowledge, the limited ability of the professions to police themselves, and the absence of any standardization in the "product" renders advertising for professional services especially susceptible to abuses that the States have a legitimate interest in controlling.

Thus, the Court has made clear in *Bates* and subsequent cases that regulation—and imposition of discipline—are permissible where the particular advertising is inherently likely to deceive or where the record indicates that a particular form or method of advertising has in fact been deceptive. In *Ohralik* v. *Ohio State Bar Assn.*, 436 U. S. 447, 462 (1978), the Court held that the possibility of "fraud, undue influence, intimidation, overreaching, and other forms of 'vexatious conduct'" was so likely in the context of in-person solicitation, that such solicitation could be prohibited. And in *Friedman* v. *Rogers*, 440 U. S. 1 (1979), we held that Texas could prohibit the use of trade names by optometrists, particularly in view of the considerable history in Texas of deception and abuse worked upon the consuming public through the use of trade names.

---

Commentary following the Rule suggests that the Rule would prohibit "advertisements about results obtained on behalf of a client, such as the amount of a damage award or the lawyer's record in obtaining favorable verdicts, and advertisements containing client endorsements."

It is understood that the format of the proposed new Rules will be considered by the House of Delegates of the American Bar Association at its 1982 midyear meeting and that the substance of the Rules will be considered at the 1982 annual meeting. We, of course, imply no view as to these proposals.

Commercial speech doctrine, in the context of advertising for professional services, may be summarized generally as follows: Truthful advertising related to lawful activities is entitled to the protections of the First Amendment. But when the particular content or method of the advertising suggests that it is inherently misleading or when experience has proved that in fact such advertising is subject to abuse, the States may impose appropriate restrictions. Misleading advertising may be prohibited entirely. But the States may not place an absolute prohibition on certain types of potentially misleading information, e. g., a listing of areas of practice, if the information also may be presented in a way that is not deceptive. Thus, the Court in *Bates* suggested that the remedy in the first instance is not necessarily a prohibition but preferably a requirement of disclaimers or explanation. 433 U. S., at 375. Although the potential for deception and confusion is particularly strong in the context of advertising professional services, restrictions upon such advertising may be no broader than reasonably necessary to prevent the deception.

Even when a communication is not misleading, the State retains some authority to regulate. But the State must assert a substantial interest and the interference with speech must be in proportion to the interest served. *Central Hudson Gas & Electric Corp.* v. *Public Service Comm'n*, 447 U. S. 557, 563–564 (1980).[15] Restrictions must be narrowly drawn, and the State lawfully may regulate only to the extent regulation furthers the State's substantial interest. Thus, in *Bates*, the Court found that the potentially adverse

---

[15] See *Central Hudson Gas & Electric Corp.* v. *Public Service Comm'n*, 447 U. S., at 566:

"In commercial speech cases, then, a four-part analysis has developed. At the outset, we must determine whether the expression is protected by the First Amendment. For commercial speech to come within that provision, it at least must concern lawful activity and not be misleading. Next, we ask whether the asserted governmental interest is substantial. If both

effect of advertising on professionalism and the quality of legal services was not sufficiently related to a substantial state interest to justify so great an interference with speech.[16]   433 U. S., at 368–372, 375–377.

## IV

We now turn to apply these generalizations to the circumstances of this case.[17]

The information lodged against appellant charged him with four separate kinds of violation of Rule 4: listing the areas of his practice in language or in terms other than that provided by the Rule, failing to include a disclaimer, listing the courts and States in which he had been admitted to practice, and mailing announcement cards to persons other than "lawyers, clients, former clients, personal friends, and relatives." Appellant makes no challenge to the constitutionality of the disclaimer requirement,[18] and we pass on to the remaining three infractions.

---

inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest."

As the discussion in the text above indicates, the *Central Hudson* formulation must be applied to advertising for professional services with the understanding that the special characteristics of such services afford opportunities to mislead and confuse that are not present when standardized products or services are offered to the public.   See n. 10, *supra.*

[16] We recognize, of course, that the generalizations summarized above do not afford precise guidance to the bar and the courts.   They do represent the general principles that may be distilled from our decisions in this developing area of the law.   As they are applied on a case-by-case basis—as in Part IV of this opinion—more specific guidance will be available.

[17] We note that the restrictions placed upon appellant's speech by Rule 4 imposed a restriction only upon commercial speech—"expression related solely to the economic interests of the speaker and its audience." *Central Hudson Gas & Electric Corp.* v. *Public Service Comm'n, supra,* at 561. By describing his services and qualifications, appellant's sole purpose was to encourage members of the public to engage him for personal profit.

[18] At oral argument counsel for appellant stated that the constitutionality of the disclaimer requirement was not before the Court, and that "[t]he dis-

Appellant was reprimanded for deviating from the precise listing of areas of practice included in the Advisory Committee addendum to Rule 4. The Advisory Committee does not argue that appellant's listing was misleading. The use of the words "real estate" instead of "property" could scarcely mislead the public. Similarly, the listing of areas such as "contracts" or "securities," that are not found on the Advisory Committee's list in any form, presents no apparent danger of deception. Indeed, as Chief Justice Bardgett explained in dissent, in certain respects appellant's listing is more informative than that provided in the addendum. Because the listing published by the appellant has not been shown to be misleading, and because the Advisory Committee suggests no substantial interest promoted by the restriction, we conclude that this portion of Rule 4 is an invalid restriction upon speech as applied to appellant's advertisements.

Nor has the Advisory Committee identified any substantial interest in a rule that prohibits a lawyer from identifying the jurisdictions in which he is licensed to practice. Such information is not misleading on its face. Appellant was licensed to practice in both Illinois and Missouri. This is factual and highly relevant information particularly in light of the geography of the region in which appellant practiced.

Somewhat more troubling is appellant's listing, in large capital letters, that he was a member of the Bar of the Supreme Court of the United States. See Appendix to this opinion. The emphasis of this relatively uninformative fact is at least bad taste. Indeed, such a statement could be misleading to the general public unfamiliar with the requirements of admission to the Bar of this Court. Yet there is no finding to this effect by the Missouri Supreme Court. There

---

ciplinary action was not based on a failure to include the disclaimer." Tr. of Oral Arg. 16.

Although, the Supreme Court of Missouri did not explicitly indicate whether appellant was in violation of each and every one of the charges made against him, that is the implication of the opinion particularly when read in light of the more detailed dissenting opinions.

is nothing in the record to indicate that the inclusion of this information was misleading. Nor does the Rule specifically identify this information as potentially misleading or, for example, place a limitation on type size or require a statement explaining the nature of the Supreme Court Bar.

Finally, appellant was charged with mailing cards announcing the opening of his office to persons other than "lawyers, clients, former clients, personal friends and relatives." Mailings and handbills may be more difficult to supervise than newspapers. But again we deal with a silent record. There is no indication that an inability to supervise is the reason the State restricts the potential audience of announcement cards. Nor is it clear that an absolute prohibition is the only solution. For example, by requiring a filing with the Advisory Committee of a copy of all general mailings, the State may be able to exercise reasonable supervision over such mailings.[19] There is no indication in the record of a failed effort to proceed along such a less restrictive path.[20] See *Central Hudson Gas & Electric Corp.* v. *Public Service Comm'n*, 447 U. S., at 566 ("we must determine whether the regulation . . . is not more extensive than is necessary to serve" the governmental interest asserted).

In sum, none of the three restrictions in the Rule upon appellant's First Amendment rights can be sustained in the circumstances of this case. There is no finding that appellant's speech was misleading. Nor can we say that it was inher-

---

[19] Rule 7.2(b) of the proposed Model Rules of Professional Conduct of the American Bar Association requires that "[a] copy or recording of an advertisement or written communication shall be kept for one year after its dissemination."

[20] The Advisory Committee argues that a general mailing from a lawyer would be "frightening" to the public unaccustomed to receiving letters from law offices. If indeed this is likely, the lawyer could be required to stamp "This is an Advertisement" on the envelope. See *Consolidated Edison Co.* v. *Public Service Comm'n*, 447 U. S. 530, 541–542 (1980) (billing insert is not a significant intrusion upon privacy, and privacy interest can be protected through means other than a general prohibition).

ently misleading, or that restrictions short of an absolute prohibition would not have sufficed to cure any possible deception. We emphasize, as we have throughout the opinion, that the States retain the authority to regulate advertising that is inherently misleading or that has proved to be misleading in practice. There may be other substantial state interests as well that will support carefully drawn restrictions. But although the States may regulate commercial speech, the First and Fourteenth Amendments require that they do so with care and in a manner no more extensive than reasonably necessary to further substantial interests. The absolute prohibition on appellant's speech, in the absence of a finding that his speech was misleading, does not meet these requirements.

Accordingly, the judgment of the Supreme Court of Missouri is

*Reversed.*

## APPENDIX TO OPINION OF THE COURT

The advertisement above appeared in the January/February 1978 issue of the West End Word and was the basis for Count I of the Information.

208

J  , R  M
- Corporate
- Partnership
- Real Estate
- Tax
- Bankruptcy
- Probate
- Contracts
- Anti-Trust
- Labor
- Criminal

- Personal Injury
- Trials & Appeals
- Securities-Bonds
- Wills, Estate-Planning
- Pension-
  Profit-Sharing
- Workman's
  Compensation
- Divorce, Separation
- Custody, Adoption

*Admitted To Practice Before*
THE UNITED STATES
SUPREME COURT
*Licensed In* MISSOURI & ILLINOIS
120 S Central ——————— 721-5321

The advertisement above appeared in the yellow pages of the Southwestern Bell Telephone Co. telephone directory for St. Louis Suburban West issued in February 1978, and was the basis for Count II of the Information.