# In the Matter of Amendment to S.J.C. Rule 3:07, DR 2-103 and DR 2-104.

Suffolk. January 9, 1986. — July 16, 1986.

Present: Hennessey, C.J., Wilkins, Liacos, Abrams, Nolan, Lynch, & O'Connor, JJ.

*Attorney at Law,* Attorney-client relationship, Solicitation of employment, Advertising. *Constitutional Law,* Attorney at law, Freedom of speech and press. *Supreme Judicial Court,* Practice of law.

Discussion of the constitutional principles guiding this court's decision to modify S.J.C. Rule 3:07, DR 2-103 and 2-104, with respect to lawyer solicitation of prospective clients. [75-81]

Discussion of policy considerations affecting the advisability of promulgating proposed rules governing lawyer solicitation of prospective clients, to the extent that such rules would be constitutionally permissible. [81-83]

This court announced the adoption of a rule regulating lawyer solicitation which, in summary, (a) prohibits all solicitation by lawyers which is coercive, harassing, or deceptive, or where the attorney knows or has reason to know that the prospective client does not want to be solicited; (b) prohibits an attorney from soliciting employment for a fee where the lawyer knows or reasonably should know that the prospective client is unable to exercise reasonable judgment due to a vulnerable physical or emotional state; (c) allows indirect solicitation by such means as mail, leaflets or electronic communication providing that the communication is clearly labeled as advertising and that a copy is retained by the lawyer for two years; and (d) prohibits all direct in-person solicitation of employment for a fee. [83-87]

Hennessey, C.J., with whom Abrams, J., joins, would have adopted the additional rule changes advanced by the court's special committee on lawyer solicitation, allowing direct in-person solicitation by a lawyer of friends, relatives, former clients, and businesses, and was of the view that the First Amendment to the United States Constitution precludes a prohibition of all in-person lawyers' solicitation of employment for a fee. [88-91]

Wilkins, J., would have adopted, as a matter of policy, the additional rule changes favored by the Chief Justice. [91]

Abrams, J., expressed the view that an absolute prohibition of in-person lawyer solicitation of employment for a fee may have an adverse impact on women and members of minorities. [92]

PROPOSALS for amendment of Rule 3:07 of the Supreme Judicial Court, recommended by the court's special committee on lawyer solicitation and publicly announced by the Justices on November 4, 1985.

*George Kuhlman* for American Bar Association.

*Michael S. Greco & Charles B. Swartwood, III,* for Massachusetts Bar Association.

*Sandra Shapiro* for Women's Bar Association of Massachusetts.

*Paula W. Gold* for Executive Office of Consumer Affairs and Business Regulation.

*Ernest Winsor* for Massachusetts Law Reform Institute.

*Andrew L. Kaufman* for the Supreme Judicial Court Committee on Lawyer Solicitation.

*Theodore P. Orenstein,* pro se, submitted a brief.

O'CONNOR, J. On August 27, 1984, the Supreme Judicial Court rules committee appointed a special committee[1] to consider modification of S.J.C. Rule 3:07, DR 2-103 and DR 2-104, as appearing in 382 Mass. 771 (1981), regarding lawyer solicitation of clients. Recent decisions of the United States Supreme Court, coupled with developments in the legal profession, have called into question our prophylactic ban on lawyer solicitation.

After extensive study, the committee proposed the adoption of a new rule on lawyer solicitation. We invited written briefs and heard argument on the committee's proposed new rule.[2] The positions of those who have commented range from allowing only that solicitation which clearly cannot be constitutionally prohibited to allowing all solicitation subject only to the requirement that it not be coercive or deceptive.

---

[1] We commend the committee for its conscientious efforts, and acknowledge the service of the following members: Karin Blake, Robert S. Bloom, Thomas E. Dwyer, Jr., Andrew L. Kaufman, Rikki J. Klieman, Daniel Klubock, Judith Kundl, Robert J. Muldoon, Jr., David G. Sacks, and Terry Jean Seligmann.

[2] We acknowledge the briefs of the American Bar Association; the Massachusetts Bar Association; the Women's Bar Association of Massachusetts; the Executive Office of Consumer Affairs and Business Regulation; the Massachusetts Law Reform Institute; and Mr. Theodore P. Orenstein.

We have considered the relevant constitutional principles, as well as the various positions of the commentators. As shown in the appendix to this opinion, we have amended S.J.C. Rule 3:07, DR 2-103, and we have deleted S.J.C. Rule 3:07, DR 2-104. As a result of these changes, in-person solicitation of employment for a fee whether by telephone or direct personal communication, is not permitted. Indirect solicitation, such as by mail, leaflets, or electronic communication, is generally permissible subject only to the requirements that it be labeled "advertising" and a copy of the communication be retained by the lawyer for two years. All solicitation that is coercive, harassing, or deceptive is prohibited, as is solicitation where the prospective client has made known to the lawyer his desire not to be solicited, or where the prospective client is in such a physical, mental, or emotional state that he cannot exercise reasonable judgment in employing a lawyer.

In this opinion we shall set forth the constitutional and policy considerations which have guided our decision. We shall also analyze the new rule section by section, discussing the import of the language and the reasoning behind its promulgation.[3]

1. *Constitutional Principles*.

The United States Supreme Court on five occasions has directly addressed the constitutionality of a State's regulation of lawyer advertising and solicitation. *Zauderer* v. *Office of Disciplinary Counsel of the Supreme Court*, 471 U.S. 626 (1985). *In re R.M.J.*, 455 U.S. 191 (1982). *Ohralik* v. *Ohio State Bar*, 436 U.S. 447 (1978). *In re Primus*, 436 U.S. 412 (1978). *Bates* v. *State Bar*, 433 U.S. 350 (1977). It is clear that lawyer advertising (*Zauderer; In re R.M.J.; Bates*) and lawyer solicitation of employment for a fee (*Ohralik*) are forms of commercial speech, and therefore are entitled to constitutional protection, albeit protection that is "somewhat less extensive than that afforded 'noncommercial speech.' " *Zauderer*,

---

[3] All the Justices join in the rule promulgated herewith, but, for the reasons stated in their separate opinions, Chief Justice Hennessey and Justices Wilkins and Abrams would permit lawyer solicitation of employment for a fee of friends, relatives, former clients, and businesses, as recommended by the special committee.

*supra* at 637. Any restriction of commercial speech, including lawyer solicitation, must be "in the service of a substantial governmental interest, and only through means that directly advance that interest." *Id.* at 638.[4]

The Supreme Court applied commercial speech principles to State restrictions on lawyer advertising for the first time in *Bates, supra.* In that case, the Court held that a State could not prohibit truthful newspaper advertising concerning the availability and price of routine legal services. *Id.* at 384. In reaching that conclusion, the Court rejected a number of justifications offered by the State of Arizona in support of its price advertising restrictions, including the State's argument that price advertising would have an adverse effect on lawyer professionalism. *Id.* at 368. The Court reasoned that lawyer advertising has little, if any, adverse effect on professionalism, and that, therefore, a ban against lawyer advertising does not advance the State's interest.

The Court's conclusion in *Bates* that truthful price advertising of routine legal services would not adversely affect lawyer professionalism does not suggest that conduct that does adversely affect that value may not be prohibited. The Court made this clear in *Ohralik,* decided less than one year after *Bates.* In *Ohralik,* the Court acknowledged that the States unquestionably have a substantial interest in guarding and promoting the professionalism of lawyers. The Court stated that "[i]n addition to its general interest in protecting consumers and regulating commercial transactions, the State bears a special responsibility for maintaining standards among members of the licensed pro-

---

[4] We limit our discussion of the constitutionally permissible regulation of lawyer solicitation to the First and Fourteenth Amendments to the United States Constitution, and to the United States Supreme Court decisions interpreting those provisions. Although in some circumstances art. 16 of the Massachusetts Declaration of Rights, as amended by art. 77 of the Amendments ("The right of free speech shall not be abridged") may protect expression not entitled to protection as a matter of Federal constitutional law, see *Commonwealth* v. *Sees,* 374 Mass. 532, 536-537 (1978), there is no reason to conclude that our State Constitution affords greater protection to lawyer solicitation than does the Federal Constitution.

fessions. . . . 'The interest of the States in regulating lawyers is especially great since lawyers are essential to the primary governmental function of administering justice, and have historically been "officers of the courts." ' . . . While lawyers act in part as 'self-employed businessmen,' they also act 'as trusted agents of their clients, and as assistants to the court in search of a just solution to disputes.' . . . While the Court in *Bates* determined that truthful, restrained advertising of the prices of 'routine' legal services would not have an adverse effect on the professionalism of lawyers, this was only because it found 'the postulated connection between advertising and the erosion of *true professionalism* to be severely strained.' . . . The *Bates* Court did not question a State's interest in maintaining high standards among licensed professionals. Indeed, to the extent that the ethical standards of lawyers are linked to the service and protection of clients, they do further the goals of 'true professionalism.' " (Citations omitted.) (Emphasis in original.) *Ohralik, supra* at 460-461.

Although, in *In re Primus, supra,* the Supreme Court considered the constitutionality of a rule that would prohibit a nonprofit organization's solicitation by mail, the Court has not specifically addressed such indirect solicitation for a fee. Nevertheless, the Court's decisions in the advertising cases make it clear that the complete prohibition of indirect solicitation by such means as mail, leaflets, or electronic communication would be violative of the First Amendment. As Justice Powell pointed out in his dissent in *Bates,* "it is clear that [the Court's] decision cannot be confined on a principled basis to price advertisements in newspapers. No distinction can be drawn between newspapers and a rather broad spectrum of other means — for example, magazines, signs in buses and subways, posters, handbills, and mail circulations." Therefore, truthful solicitation by mail, leaflets, and electronic means must be permitted except where the prospective client has made known to the lawyer his desire not to be solicited, or the prospective client is in such physical, mental, or emotional state that he cannot exercise reasonable judgment in employing a lawyer.

In the case of *In re Primus, supra,* the Supreme Court reversed the public reprimand of a South Carolina attorney who had solicited a client by mail on behalf of the American Civil Liberties Union (ACLU), seeking to redress an allegedly unconstitutional sterilization operation performed on the prospective client. The Supreme Court of South Carolina found that Primus had violated DR 2-103(D) (5) of that court, which prohibited a lawyer for a nonprofit organization from soliciting clients, where the primary purpose of her organization is the rendition of legal services. *Id.* at 420. The Supreme Court of the United States reversed, ruling that application of the disciplinary rule to Primus in the circumstances of that case violated the First and Fourteenth Amendments to the United States Constitution. *Id.* at 439. The Court concluded that litigation of the form engaged in by nonprofit organizations such as the ACLU constituted "a form of political expression," and not merely a "technique of resolving private differences." *Id.* at 428, quoting *NAACP* v. *Button,* 371 U.S. 415, 429 (1963). Political expression, as opposed to purely commercial speech, is a fundamental right under the First Amendment. *In re Primus, supra* at 426. The attorney's conduct in that case — advising a potential client of free legal representation in a civil rights action — fell within the "generous zone of First Amendment protection reserved for associational freedoms." *Id.* at 431. The Commonwealth, therefore, cannot constitutionally prohibit truthful and noncoercive lawyer solicitation on behalf of a nonprofit organization such as the ACLU.

While no principled distinction can be made between lawyer advertising and lawyer solicitation for pecuniary gain by such means as mail, leaflet, or electronic device, a principled distinction can be made between a lawyer seeking a legal business by those means, and one seeking it by direct in-person solicitation. The *Ohralik* case is the only case in which the Supreme Court has addressed the constitutionality of a prophylactic rule banning the in-person solicitation of clients by lawyers for money. *Ohralik* was a classic case of "ambulance chasing," but the language employed by the Court in its opinion, together with subseqent decisions characterizing the principle announced

in that case, strongly suggest that the States may promulgate prophylactic rules banning all in-person solicitation.

The Court observed in *Ohralik* that "[t]he solicitation of business by a lawyer through direct, in-person communication with the prospective client has long been viewed as inconsistent with the profession's ideal of the attorney-client relationship and as posing a significant potential for harm to the prospective client." *Id.* at 454. The Court outlined the significant differences between printed advertisements and in-person solicitation. "Unlike a public advertisement, which simply provides information and leaves the recipient free to act upon it or not, in-person solicitation may exert pressure and often demands an immediate response, without providing an opportunity for comparison or reflection. The aim and effect of in-person solicitation may be to provide a one-sided presentation and to encourage speedy and perhaps uninformed decisionmaking; there is no opportunity for intervention or counter-education by agencies of the Bar, supervisory authorities, or persons close to the solicited individual. The admonition that 'the fitting remedy for evil counsels is good ones' is of little value when the circumstances provide no opportunity for any remedy at all. In-person solicitation is as likely as not to discourage persons needing counsel from engaging in a critical comparison of the 'availability, nature, and prices' of legal services, cf. *Bates,* 433 U.S. 364; it actually may disserve the individual and societal interest, identified in *Bates,* in facilitating 'informed and reliable decisionmaking.'" *Id.* at 457-458. After setting forth the dangers to the public involved with in-person solicitation as well as the adverse effect such solicitation would have on the profession itself, the Court concluded: "It therefore is not unreasonable, or violative of the Constitution, for a State to respond with what in effect is a prophylactic rule." *Id.* at 467.

Subsequent decisions by the Supreme Court also support the view that *Ohralik* stands for the proposition that prophylactic rules banning all in-person solicitation of employment for a fee are constitutionally permissible. In *In re R.M.J., supra* at 202, a unanimous Court stated, "In *Ohralik* . . . the Court held that the possibility of 'fraud, undue influence, intimida-

tion, overreaching, and other forms of "vexatious conduct," ' was so likely in the context of in-person solicitation, that such solicitation could be prohibited." In *Zauderer, supra* at 641-642, the Court characterized *Ohralik* in a similar manner by saying, "Our decision in *Ohralik* was largely grounded on the substantial differences between face-to-face solicitation and the advertising we had held permissible in *Bates*. In-person solicitation by a lawyer, we concluded, was a practice rife with possibilities for overreaching, invasion of privacy, the exercise of undue influence, and outright fraud. . . . In addition, we noted that in-person solicitation presents unique regulatory difficulties because it is 'not visible or otherwise open to public scrutiny.' . . . These unique features of in-person solicitation by lawyers, we held, justified a prophylactic rule prohibiting lawyers from engaging in such solicitation for pecuniary gain, but we were careful to point out that 'in-person solicitation of professional employment by a lawyer does not stand on a par with truthful advertising about the availability and terms of routine legal services.' " (Citations omitted.)

In addition to the view taken by the Court in *Zauderer*, Mme. Justice O'Connor, in dissent, took the position that "[a]l-though the antisolicitation rule in *Ohralik* would in some circumstances preclude an attorney from honestly and fairly informing a potential client of his or her legal rights, the Court nevertheless deferred to the State's determination that risks of undue influence or overreaching justified a blanket ban. See also *Friedman* v. *Rogers*, 440 U.S. 1 (1979) (upholding Texas prohibition on use of any trade name in the practice of optometry due to risk of deceptive or misleading use of trade names). At a minimum, these cases demonstrate that States are entitled under some circumstances to encompass truthful, nondeceptive speech within a ban of a type of advertising that threatens substantial state interests." *Zauderer, supra* at 677 (O'Connor, J., dissenting).

Based on the aforementioned Supreme Court cases, we need not discuss the advisability, from a policy point of view, of disciplinary rules that would prohibit truthful, noncoercive, indirect lawyer solicitation of employment for a fee by such

means as mail, leaflet, or electronic device, or solicitation on behalf of nonprofit organizations as in *In re Primus, supra.* Such rules would not be constitutional. A discussion of the wisdom of other prohibitions is indicated, however, particularly with respect to direct in-person solicitation of employment for a fee. The Supreme Court has not yet ruled definitively on the lawfulness of a State's prohibition of direct in-person solicitation of employment for a fee, but the Justices' language quoted and referred to above strongly suggests that such prohibition, including a blanket ban on all lawyer solicitation of employment for a fee, would be permissible.

2. *Policy Considerations.*

We turn, then, to a consideration of the advisability of promulgating such rules as we are satisfied would be constitutionally permissible. In formulating a policy in this regard, it is appropriate that we consider the interests of lawyers and of the public, and that we weigh the reasonably likely benefits and deficits for all concerned of a relaxed lawyer solicitation rule against the benefits and deficits likely to follow from a stricter rule. Regarding the interests of lawyers, many lawyers believe that solicitation is an inherently undignified and unseemly practice, but others suggest that this is an antiquated and elitist notion that serves only to perpetuate the status of an established class of attorneys to the unfair disadvantage of others. See *Ohralik, supra* at 474-475 (Marshall, J., concurring in part). The Women's Bar Association contends that anti-solicitation rules, often spawned by seemingly neutral consideration of "professionalism," may have a disparate impact on women and members of minorities who are only beginning to enter the profession in significant numbers. Focusing on the interests of the consumer public, the Executive Office of Consumer Affairs and Business Regulation argues that lawyers, as educated and trained members of the profession, are the best conduits for communicating legal information to lay members of the public. Through their solicitation of prospective clients, it is argued, lawyers will in effect be educating consumers about their legal rights and remedies, and will be providing them with a basis upon which to engage in informed and reliable decisionmaking.

Those arguments support a rule that would permit truthful direct in-person solicitation of employment for a fee in most circumstances. We have considered those arguments carefully, but we are persuaded, primarily for the reasons articulated by the Supreme Court, that the possible benefits of in-person solicitation of employment for a fee do not justify the risks associated with such activity. The risk of undue influence in connection with direct in-person solicitation for a fee of prospective clients is far greater than with indirect solicitation. An individual confronted with a piece of mail from an attorney is not under pressure to respond immediately, or to engage in a dialogue about his legal needs. Such an individual may treat a written communication in the same maner as any other letter proposing a business transaction: if it is unwanted, he simply can throw it away. However, a person who is directly solicited is forced to respond immediately to the statements or personal inquiries of the lawyer. The attorney is in a position to engage the prospective client in discussion that is weighted in favor of the lawyer. In addition, there is no record of what is said, so the potential for abuse by lawyers is significant. Finally, personal solicitation in most instances represents a greater invasion of privacy for prospective clients than does written solicitation.

The special committee appointed to consider modification of our rules recommends a rule that would prohibit in-person solicitation, but that that rule be subject to certain exceptions. The committee has recommended that the prohibition not apply when "(1) the prospective client is a friend, relative, or former client of the lawyer; or (2) the prospective client is an organization and the solicitation is in connection with the business of the organization; or is engaged in trade or commerce as defined in G. L. c. 93A, § 1 (*b*), and the solicitation is in connection with such prospective client's trade or commerce." We think, however, that the better course is to promulgate a prophylactic rule imposing a blanket ban on all in-person solicitation.

While it may be argued that a rule excepting in-person solicitation of friends, relatives, and former clients from its prohibitions is justified by the familiarity of those persons with

the lawyer, and that excepting in-person solicitation of persons engaged in business is justified by such persons' sophistication in business matters, making them unlikely victims of overpowering lawyers, we think the better view is that, unless the prohibition is all inclusive, the Commonwealth's interests in professionalism and the prevention of misrepresentation and overreaching are not adequately served. Defining the word "friend" in a way that fairly notifies lawyers of what conduct is prohibited, and in a way that realistically permits enforcement, is impossible. Moreover, the familiarity that a friend, relative or former client has with the lawyer in no way ensures against misrepresentation and overreaching. In fact, the relationship between the parties may discourage the prospective client from making searching inquiry or forming considered judgment about whether retaining the lawyer would be in the prospective client's best interest. Also, although many organizations and individuals engaged in business are sophisticated enough about commercial matters to resist overtures by lawyers, it seems likely that there are also numerous business organizations and persons with less sophistication who would be highly vulnerable to pressure exerted by lawyers seeking their business.

3. *DR 2-103, As Amended.*

(A) *"In soliciting professional employment, a lawyer shall not coerce or harass a prospective client and shall not make a deceptive statement or claim."*

The term "solicitation," as used throughout DR 2-103, contemplates communications (in-person or by such means as mail, telephone, or other electronic device) directed at specific individuals or groups for the purpose of obtaining business or securing employment. "Solicitation" does not include communications which are circulated more generally through newspapers, television commercials, or placards in mass transit vehicles. Such communications will be considered "advertising" subject to S.J.C. Rule 3:07, DR 2-101, as appearing in 382 Mass. 770 (1981), even when targeted at specific legal needs. Cf. *Zauderer* v. *Office of Disciplinary Counsel of the*

*Supreme Court,* 471 U.S. 626 (1985) (newspaper advertisement targeted at users of Dalkon Shield considered solicitation under Ohio disciplinary rule). "Solicitation" also does not include the mailing of professional notices or announcement cards, which are governed by S.J.C. Rule 3:07, DR 2-102, as appearing in 382 Mass. 770 (1981).

Paragraph (A) applies to all solicitation, regardless of the medium, and regardless of whether it is engaged in for a fee or by a nonprofit organization. Solicitation that is deceptive, coercive, or harassing is prohibited.

> (B) *"A lawyer shall not solicit professional employment if:*
> (1) *The lawyer knows or reasonably should know that the physical, mental, or emotional state of the prospective client is such that there is a substantial potential that the person cannot exercise reasonable judgment in employing a lawyer, provided, however, that this prohibition shall not apply to solicitation, not for a fee; or*
> (2) *The prospective client has made known to the lawyer a desire not to be solicited."*

Subparagraph (B) (1) prohibits solicitation of employment for a fee where the condition of the prospective client places him in a vulnerable position, and thus renders it unlikely that he will be able to exercise reasonable judgment in selecting a lawyer or making personal legal decisions. In determining whether a contact is permissible under DR 2-103 (B) (1), it is relevant to consider the time and circumstances under which the contact is initiated. For example, a person undergoing active medical treatment for a traumatic injury is unlikely to be in an emotional state in which reasonable judgment about employing a lawyer can be exercised. See *Ohralik* v. *Ohio State Bar Ass'n,* 436 US. 447, 465 (1978). Similarly, one who is grieving the loss of a family member generally will not be competent to make informed and rational choices among attorneys desiring to probate the estate. The reference to the "physical, mental, or emotional state of the prospective client" is intended to include any condition by reason of which the pro-

spective client lacks sufficient competence to engage in prudent decisionmaking.

The reference in subparagraph (B) (1) to solicitation "for a fee" is intended to carry forward the exemption in former DR 2-103 for nonprofit legal organizations. This exemption reflects the belief that where solicitation is not motivated by the desire for pecuniary gain, there is less incentive for, and likelihood of, overreaching and undue influence. Also, success in vindicating the rights of the elderly and infirm, the mentally disturbed, the incarcerated, resident aliens, or otherwise unsophisticated or incompetent clients often depends upon solicitation by nonprofit legal organizations. See *In re Primus,* 436 U.S. 412, 429-431 (1978). Under the new rule, nonprofit organizations are thus exempt from the provisions of (B) (1), (C), or (D). The possibility that such an organization may be entitled by statute to an award of attorney's fees does not render this exemption inoperative. Nonprofit organizations are subject to the general prohibitions of DR 2-103 (A), (B) (2), and (E).

Under subparagraph (B) (2), no attorney may engage in solicitation by any means where the prospective client has made known his desire not to be solicited. This provision is intended to prevent harassment of prospective clients by successive and unwanted instances of solicitation.

(C) *"A lawyer shall not solicit professional employment for a fee from a prospective client by written communication, audio or video cassette, or other electronic materials, directed to such prospective client unless:*
*(1) each such communication is clearly labeled 'advertising' on its face and on any envelope or container; and*
*(2) the lawyer retains a copy of such communication for two years."*

Paragraph (C) governs indirect solicitation by such means as mail, leaflets, or electronic communication (e.g., audio or video cassette). In-person solicitation, whether by telephone or direct personal contact, is governed by paragraph (D). Indirect solicitation through written communications is allowed

under paragraph (C), subject only to the requirement that these communications are clearly labeled "advertising," and are retained by the lawyer for a period of two years. See *In re R.M.J.*, 455 U.S. 191, 206 n.20 (1982) (noting approval of such restrictions). Requiring attorneys to retain a copy of their mailings will allow the Board of Bar Overseers to supervise compliance with this and other disciplinary rules. The labeling requirement will serve to notify unsuspecting consumers of the nature and purpose of the mailing.[5]

> (D) *"A lawyer shall not solicit professional employment for a fee from a prospective client in person or by personal communication by telephone, electronic device, or otherwise."*

Direct solicitation of employment for a fee is prohibited. There are no exceptions.

> (E) *"A lawyer shall not pay any person or organization to solicit professional employment for the lawyer from a prospective client. However, this disciplinary rule does not prohibit a lawyer or a partner or associate or any other lawyer affiliated with the lawyer or the lawyer's firm from requesting referrals from a lawyer referral service operated, sponsored, or approved by a bar association or from cooperating with any other qualified legal assistance organization."*

This paragraph prohibits the employment of paid solicitors, and thus limits the practice of solicitation under DR 2-103 to members of the bar. A lawyer or law firm may not employ marketing personnel to solicit business in person or by use of telephone banks. Written communications may be prepared and distributed by the nonlegal staff of a law firm under the

---

[5] The special committee recommends that the indirect solicitation of friends, relatives, and former clients be excepted from the requirements of DR 2-103 (C) (1). We have not accepted that recommendation for the reasons we have set forth in our policy discussion of in-person solicitation.

supervision of an attorney, provided that the lawyer retains responsibility for the content of the mailing.

Paragraphs (E) retains the substance of former DR 2-103 relating to bar association approved lawyer referral services.

4. *Conclusion.*

In summary, the lawyer solicitation rule that we now adopt prohibits all solicitation which is coercive, harassing, or deceptive; or where the attorney knows or has reason to know that the prospective client does not want to be solicited. In regard to solicitation of employment for a fee, the rule prohibits an attorney from soliciting a client where the lawyer knows or reasonably should know that the prospective client is unable to exercise reasonable judgment due to a vulnerable physical or emotional state.

In addition to these general principles, the rule makes separate provision for indirect solicitation by such means as mail, leaflets, or electronic communication, on the one hand, and direct in-person solicitation of employment for a fee on the other hand. Indirect solicitation is allowed providing that the communication is clearly labeled advertising, and a copy is retained by the lawyer for two years. Direct in-person solicitation of employment for a fee is prohibited.


APPENDIX

On                , it was ordered by the Justices that the Rules of the Supreme Judicial Court be amended as follows:

Rule 3:07:                By deleting the single paragraph of DR 2-103, and by adding the new paragraphs (A), (B), (C), (D), and (E) set out below.
                          By deleting DR 2-104.

(A) In soliciting professional employment, a lawyer shall not coerce or harass a prospective client and shall not make a deceptive statement or claim.

(B) A lawyer shall not solicit professional employment if:

(1) The lawyer knows or reasonably should know that the physical, mental, or emotional state of the prospective client is such that there is a substantial potential that the person cannot exercise reasonable judgment in employing a lawyer, provided, however, that this prohibition shall not apply to solicitation, not for a fee; or

(2) The prospective client has made known to the lawyer a desire not to be solicited.

(C) A lawyer shall not solicit professional employment for a fee from a prospective client by written communication, audio or video cassette, or other electronic materials, directed to such prospective client unless:

(1) each such communication is clearly labeled "advertising" on its face and on any envelope or container; and

(2) the lawyer retains a copy of such communication for two years.

(D) A lawyer shall not solicit professional employment for a fee from a prospective client in person or by personal communication by telephone, electronic device, or otherwise.

(E) A lawyer shall not pay any person or organization to solicit professional employment for the lawyer from a prospective client. However, this disciplinary rule does not prohibit a lawyer or a partner or associate or any other lawyer affiliated with the lawyer or the lawyer's firm from requesting referrals from a lawyer referral service operated, sponsored, or approved by a bar association or from cooperating with any other qualified legal assistance organization.

HENNESSEY, C.J. (with whom Abrams, J., joins). I concur with the result reached by the court, in so far as it permits a lawyer to solicit prospective clients through written communications. However, I would adopt the entire proposal of the special committee appointed by this court, and allow direct, in-person solicitation of friends, relatives, former clients, and businesses. I believe that such a rule is required by the First Amendment.

Although the Supreme Court has addressed these matters in only a few cases, the First Amendment principles governing our decision are clear.[1] Truthful and nondeceptive commercial speech may be restricted only in the service of a substantial government interest, and only through means that directly advance that interest. *Zauderer* v. *Office of Disciplinary Counsel of the Supreme Court*, 471 U.S. 626, 637-638 (1985). *Central Hudson Gas & Elec. Corp.* v. *Public Serv. Comm'n*, 447 U.S. 557, 563 (1980). A State is not free to weigh the potential burdens of commercial speech against its perceived benefits. Rather, the State must identify the substantial interests which it

---

[1] I believe that this court, in reaching a conclusion on the First Amendment issues which differs from mine, has relied on excerpts from Supreme Court opinions which do not express the controlling constitutional principles as conveyed by all that the Supreme Court has said upon these matters.

seeks to advance through its regulation of lawyer solicitation, and then formulate its restrictions in a manner no more extensive than reasonably necessary to further these ends. See *In re R.M.J.*, 455 U.S. 191, 207 (1982).

Under the rule now adopted, indirect solicitation, such as by mail, leaflets, or electronic communication, is generally permissible subject only to the requirements that it be labeled "advertising" and a copy of the communication be retained by the lawyer for two years. All solicitation that is coercive, harassing, or deceptive is prohibited, as is solicitation where the prospective client has made known to the lawyer his desire not to be solicited, or where the prospective client is in such a physical, mental, or emotional state that he cannot exercise reasonable judgment in employing a lawyer. These changes accord with our special committee's recommendations, and I agree that they are constitutionally justified by substantial State interests in preventing deception or coercion of prospective clients.

However, this court also states that all in-person solicitation of employment for a fee, whether by telephone or direct personal communication, is prohibited. I think that the First Amendment precludes such a broad prohibition. As a general proposition, in-person solicitation may be precluded by the State because such direct confrontation by a lawyer may override the judgment of the prospective client. However, as pointed out by our special committee, these dangers simply do not apply to the in-person solicitation of friends, relatives, former clients, and businesses. In my opinion, there is no substantial State interest which warrants a blanket prohibition of all in-person solicitation.

The court's opinion indicates that considerations of "professionalism" warrant this prophylactic rule. I disagree. The Supreme Court has said that the belief that lawyers are somehow "above" trade has become an anachronism. *Bates* v. *State Bar*, 433 U.S. 350, 371-372 (1977). In its most recent pronouncement on this subject, a majority of the Supreme Court stated that "although the State undoubtedly has a substantial interest in ensuring that its attorneys behave with dignity and decorum

in the courtroom, we are unsure that the State's desire that attorneys maintain their dignity in their communications with the public is an interest substantial enough to justify the abridgement of their First Amendment rights. *Even if that were the case,* we are unpersuaded that undignified behavior would tend to recur so often as to warrant a prophylactic rule" (emphasis added). *Zauderer, supra* at 647-648.

The court indicates that an all-inclusive prohibition of in-person solicitation is warranted by the difficulties posed in defining and enforcing a less rigid rule. The mere fact that the word "friend" is "impossible" to define with precision[2] does not constitute a substantial State interest which justifies an infringement on First Amendment rights. The Supreme Court has repeatedly held that restrictions on commercial speech must be narrowly crafted, see *Zauderer, supra* at 644, and a prophylactic rule barring truthful, noncoercive, in-person solicitation is patently suspect. See *In re R.M.J., supra* at 203. Where First Amendment rights are at stake, the difficulty of drawing lines between protected and unprotected speech "is no reason for avoiding the undertaking." *In re Primus,* 436 U.S. 412, 438 n.32 (1978). See *Bates, supra* 383-384.

The policy reasons which are offered for allowing in-person solicitation in limited circumstances closely parallel the First Amendment considerations. First, solicitation will serve to inform consumers about the availability, nature, and price of legal services. Such an exchange of commercial information, even if it furthers the purely economic interests of the speaker, will also provide the listener with important information, without which he might be unable to vindicate or protect his legal rights. Second, truthful and noncoercive solicitation may result in a more favorable distribuiton of legal services, to the extent that certain sectors of the consuming public are chronically underinformed about their legal needs and the availability of

---

[2] If allowing in-person solicitation of "friends" poses enforcement problems, it is obvious that a rule prohibiting an attorney from discussing potential legal representation with friends, relatives, or former clients poses similar, if not greater, difficulties. It is impractical to formulate a rule which in all probability is consistently disregarded.

legal representation. See Federal Trade Commission Staff Report, Improving Consumer Access to Legal Services: The Case for Removing Restrictions on Truthful Advertising 8-16 (1984). See also S.J.C. Rule 3:07, Canon 2, as appearing in 382 Mass. 770 (1981) (lawyers shall "Assist the Legal Profession in Fulfilling Its Duty to Make Legal Counsel Available"). Third, I am not unmindful of the disparate impact which non-solicitation rules may have on the providers as well as the consumers of legal services. *Ohralik* v. *Ohio State Bar Ass'n,* 436 U.S. 447, 475 (Marshall, J., concurring). Some proponents of our special committee's recommendations contend that non-solicitation rules discriminate against those practitioners (including women and members of minorities) who are most in need of overt solicitation of business in order to become established in the profession.

Finally, I concur in this court's expressed concern for dignity and professionalism among lawyers. But the rules of court are limited by constitutional considerations and by the legitimate arguments of consumerism. The rules speak only to "must" and "must not," and to bar discipline. I think there is among lawyers a consensus or near consensus that speaks to the ideals rather than the personal rights of the lawyer. Those ideals can best be advanced, not by rules of court, but by example and by collegial persuasion.

WILKINS, J. I agree with the rule amendment as far as it goes. I would have gone further and approved the additional changes advanced by the committee and favored by the Chief Justice. I rather suspect the Chief Justice is correct in his analysis of where First Amendment rights will go in this area. I do not rely, however, on the anticipated limits of future First Amendment decisions, nor do I rely on any requirements of the Massachusetts Declaration of Rights, except that any rule should reasonably avoid constitutional shoals, particularly those only vaguely charted. In my view, as a matter of policy, the rules of this court should allow conduct permissible under the committee's proposal.

ABRAMS, J. I join in the Chief Justice's opinion. I add only that the absolute bar against in-person solicitation may have a particular adverse impact on women and members of minorities, both as consumers and as suppliers of legal services. Historically, these groups have had only limited access to the preestablished networks that, for traditional male lawyers, have been sources of client referrals, and, for clients, sources of information about the availability and quality of legal services. Overly restrictive solicitation rules may hinder the professional development of women and members of minorities as lawyers, and may obstruct the flow of information about legal problems and remedies to those consumer groups most in need of legal assistance. See *Ohralik* v. *Ohio State Bar Ass'n,* 436 U.S. 447, 474-475 (1978) (Marshall, J., concurring). Because of this potentially discriminatory aspect, I believe it inappropriate on policy grounds as well as constitutional grounds not to adopt the broad rule proposed by the committee. Even if there were no discriminatory aspect to the rule announced today, the committee's proposal is correct as a matter of policy. See opinion of Wilkins, J., *ante.*