Thomas J. Beckett Program Administrator Colorado State Board of Medical Examiners 1560 Broadway, Suite 1300 Denver, Colorado 80202
Dear Mr. Beckett:
I write in response to your request for a formal opinion regarding the enforceability of § 12-36-128.5(8)(f), C.R.S. (1991).
QUESTION PRESENTED AND CONCLUSION
Does § 12-36-128.5(8)(f), C.R.S. (1991) prohibit advertising of medical specialty board certification if the board in question is not approved by the American Board of Medical Specialties ("ABMS") or by the Colorado Board of Medical Examiners ("BME")?
 Yes, However, this provision cannot serve as a basis for disciplinary action until the BME adopts a rule regarding its approval of medical specialty boards.
ANALYSIS
Section 12-36-128.5, C.R.S. (1991) provides, in pertinent part:
 (8) Any advertisement disseminated or caused to be disseminated by a physician may include the following:
. . . .
 (f) A statement that the physician is certified or is eligible for certification by a specifically identified private or public board or parent association if that board or association is an American board of medical specialties member board or a board or association with substantially equivalent requirements approved by the state board of medical examiners. . . .
This statute regulates conduct in an area of rapidly developing constitutional precedent. The courts have narrowly circumscribed the ability of states to regulate commercial speech. A number of recent U.S. Supreme Court decisions have rejected professional advertising restrictions very similar to those addressed by this statute. Accordingly, we must carefully consider the constitutional implications of this statute, as well as pure statutory construction.
This opinion will first examine the statutory structure, and then address the law in light of constitutional considerations.
The statute specifically addresses advertising where the physician states that he or she "is certified or eligible for certification" by a particular board. This prohibition is limited to the area of specialty board certification and does not apply to other types of advertising not otherwise set out in subsection (8). These other claims are governed solely by §12-36-128.5(8)(q).[1]
The statute in question addresses only the issue of certification, presumably because this carries a unique connotation to medical service consumers. Advertising of "certification" (which implies having passed a test or met specific experience or performance criteria) may have a meaning to consumers that mere "membership" does not. When advertising does address certification, it can only do so, under the statute,if that board is approved by the ABMS or BME. All other board certification statements would be prohibited.
Constitutional considerations, however, prevent us from ending the inquiry here.
While deceptive commercial speech is unprotected by the First Amendment, Virginia Pharmacy Bd. v. Virginia CitizensConsumer Council, 425 U.S. 748 (1976), potentially deceptive or misleading commercial speech may be restricted only in a manner which is no greater than necessary to directly advance a substantial government interest. See, e.g., Peelv. Attorney Registration Disciplinary Commiss'n,110 S. Ct. 2281 (1990); Shapero v. Kentucky BarAss'n, 486 U.S. 466 (1988); Zauderer v. Office ofDisciplinary Counsel, 471 U.S. 626 (1985). Advertising for professional services is particularly susceptible to being potentially misleading.[2] However, the United States Supreme Court has struck down one set of advertising limitations as being overly broad, see Peel (attorney advertised he was "Certified Civil Trial Specialist by the National Board of Trial Advocacy"), and the Colorado Constitution is even more protective of free speech rights than is the federal Constitution. See, e.g., Bock v. Westminster MallCo., 819 P.2d 55 (Colo. 1991).
The purpose of advertising limitations is, in part, to protect the public from "bogus" boards. See Peel. Not all boards other than ABMS or BME approved boards are "bogus" boards, however. There are boards which do have objective and consistently applied standards, but which fail to meet the very high standards of the ABMS.
This is not to say that the state is unable to place any restriction on advertising by members of these self-designated boards. The purpose of § 12-36-128.5(8)(f) is to help the consumer of medical services make intelligent choices as to health care providers by making the words "board certified" have some intrinsic meaning.
The ABMS completely dominates the field of board certification for physicians. It establishes the minimum standards for its member specialty boards, and its member specialty boards all require completion of a residency program approved by the Accreditation Council for Graduate Medical Education. With one exception, there is no other comparable national medical certification organization which has standards for admission of specialty boards and which takes part in the evaluation of physician residency programs.[3] Consequently, the phrase "board certified" is largely understood to mean membership in an ABMS board. It is this that makes simple advertisement of "board certification" by self-designated boards potentially misleading.
As noted above, Colorado may totally ban false or deceptive commercial speech. However, any restriction onpotentially misleading speech must be narrowly tailored to promote the government interest. E.g., In reR.M.J., 455 U.S. 191, 203 (1982). For this category of potentially misleading advertising, the state could, for instance, require disclaimers or mandatory disclosures.See In re R.M.J., 455 U.S. at 201;Zauderer, 471 U.S. at 651. This type of restriction has the unique ability to serve the government interest without impermissibly affecting rights of expression. Furthermore, the Court in Peel indicated that a state may permissibly screen certifying organizations. The Court in In reR.M.J. also indicated that states may place an absolute ban on potentially misleading advertising if the information simply cannot be presented in a manner that is non-deceptive. If the BME could make this showing, it could justify a total ban on this type of misleading advertising.
To handle this difficult issue in a constitutionally appropriate manner, the BME approval process becomes critical. The BME must determine whether the state has a compelling interest in prohibiting advertising by certain board certification. The BME has essentially two options:
 (1) Establish standards that differentiate between certifications based on the stringency of their certification process rather than the sham nature of the organization. The BME could refuse approval if a certification has such low standards that it is inherently misleading to consumers.
 (2) Require disclaimers to prevent misleading implications of a particular type of certification.
The BME must develop a factual basis for its decision. The BME must also avoid endorsing any restrictions which are anticompetitive. Patrick v. Burget, 486 U.S. 94
(1988).
The statute requires that the BME is to determine what certifications are "substantially equivalent" to ABMS certification. This phrase is subject to two possible interpretations. One is to strictly inquire whether the certification standards are as stringent as ABMS standards. A broader interpretation would tie substantial equivalence to advertising's impact on the consumer, i.e., is the consumer likely to be misled because the certification standard is so far different from ABMS certification? This discretion must be broadly interpreted to meet constitutional standards.
The statute can be interpreted to reconcile statutory language and constitutional requirements. But to be constitutional, the regulatory structure must be based on a finding that the state has a compelling interest in prohibiting inherently misleading advertising. The BME must find the appropriate balance between protecting consumers from inherently deceptive advertising and inhibiting the free speech of competitors for medical services.
The statute is constitutional because it gives the BME the discretion to weigh evidence, utilize its expertise, and enunciate a workable standard. Until the BME has the opportunity to develop the factual basis for its decision, it is my view that no disciplinary actions should be undertaken. My office will be happy to work with the BME to negotiate the complex process of formulating a constitutional regulation.
SUMMARY
Subsection 12-36-128.5(8)(f), C.R.S. specifically prohibits misleading advertising in the form of advertising of "board certification" where those words lack intrinsic meaning. Constitutional considerations, however, require specific findings and narrow restrictions when limiting otherwise truthful speech.
Sincerely,
 GALE A. NORTON Attorney General
ADVERTISING MEDICAL EXAMINERS PHYSICIANS AND SURGEONS
Section 12-36-107.6(1), C.R.S. (1991) Section 12-36-128.5, C.R.S. (1991) Section 12-36-128.5(8)(f), C.R.S. (1991) Section 12-36-128.5(8)(q), C.R.S. (1991)
MEDICAL EXAMINERS, BD. OF
Subsection 12-36-128.5(8)(f) is a mandatory prohibition; however, the regulation may be used only following rule making to insure minimal impact on protected speech.
[1] This provision allows:
 (q) Any other item of factual information that is not false, fraudulent, misleading, or likely to deceive.
[2] This follows from "[t]he public's comparative lack of knowledge, the limited ability of the professions to police themselves, and the absence of any standardization in the `product'. . . ." In re R.M.J., 455 U.S. 191, 202
(1982).
[3] The one exception is the American Osteopathic Association ("AOA"), which recognizes its own specialty boards for osteopathic physicians. While the AOA was not specifically listed by the legislature as a separate, certifying organization, it would presumably qualify as a BME approved, "substantially equivalent" organization under subsection (8)(f). See12-36-107.6(1), C.R.S. (1991).