728 F.2d 915
 BRIGGS & STRATTON CORPORATION and Michael Hamilton,
Plaintiffs-Appellants,
v.
Malcolm BALDRIGE, Secretary of the United States Department
of Commerce, et al., Defendants-Appellees.
The TRANE COMPANY, et al., Plaintiffs-Appellants,
v.
Malcolm BALDRIGE, Secretary of the United States Department
of Commerce, et al., Defendants-Appellees.
 Nos. 82-2112, 82-2392 and 83-1258.
 United States Court of Appeals,
Seventh Circuit.
 Argued Nov. 4, 1983.
Decided Feb. 24, 1984.
Rehearing and Rehearing En Banc Denied March 26, 1984.
 
 Elwin J. Zarwell, Quarles & Brady, Milwaukee, Wis., Brice M. Clagett, Covington & Burling, Washington, D.C., for plaintiffs-appellants.
 Robert S. Lavet, Dept. of Justice, Washington, D.C., for defendants-appellees.
 Before BAUER and ESCHBACH, Circuit Judges, and CAMPBELL, Senior District Judge.*
 ESCHBACH, Circuit Judge.
 
 
 1
 The appellants contend that they have a First Amendment right to answer questions asked by Arab boycott offices pursuant to the Arabs' trade boycott of Israel. We disagree, and accordingly affirm the judgments of the district courts.
 
 I.
 
 2
 Many Arab countries are engaged in a long-standing trade boycott of Israel. As one means of policing their boycott, the Arabs, through their boycott offices, send questionnaires to companies they suspect are violating the terms of the boycott. Companies are typically questioned about their relationship with Israel, Israeli firms, and other companies that do business with Israel. The Arabs have in the past blacklisted companies which do not return completed questionnaires, although failure to reply does not always result in this sanction. The appellants received such questionnaires. A portion of their business depends on access to the Arab states. The appellants wanted to respond to the questionnaires in order to avoid the possibility of being blacklisted. This they were forbidden to do, however, by the Export Administration Act, 50 U.S.C.App. Secs. 2401-2420, and by regulations promulgated under the Act by the Commerce Department. In separate district court proceedings, the appellants attacked the constitutionality of these prohibitions under the First, Fifth, and Ninth Amendments. Both district courts entered summary judgment for the government. See Briggs & Stratton Corp. v. Baldrige, 539 F.Supp. 1307 (E.D.Wis.1982) (Gordon, J.); Trane Co. v. Baldrige, 552 F.Supp. 1378 (W.D.Wis.1983) (Warren, J.). Appeals were taken from both judgments, and we consolidated the appeals. We affirm, and adopt Judge Gordon's opinion in Briggs & Stratton, supra. We write separately only to address the contention that the appellants' proposed answers to the boycott questionnaires are entitled to the full measure of protection afforded by the First Amendment; that is, that the boycott responses should be considered "traditional" rather than "commercial" speech.II.
 
 
 3
 The Supreme Court has discussed the distinction between commercial and noncommercial speech in a number of recent cases. Commercial speech has been defined as speech which "does no more than propose a commercial transaction," Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc., 425 U.S. 748, 762, 96 S.Ct. 1817, 1825, 48 L.Ed.2d 346 (1976), "is confined to the promotion of specific goods or services," Metromedia, Inc. v. City of San Diego, 453 U.S. 490, 505 n. 12, 101 S.Ct. 2882, 2891, n. 12, 69 L.Ed.2d 800 (1981), or "is related solely to the economic interests of the speaker and its audience," In re R.M.J., 455 U.S. 191, 204 n. 17, 102 S.Ct. 929, 938 n. 17, 71 L.Ed.2d 64 (1982), quoting Central Hudson Gas & Electric v. Public Service Comm'n, 447 U.S. 557, 561, 100 S.Ct. 2343, 2348, 65 L.Ed.2d 341 (1980). The appellants concede that their desire to answer the questionnaires is motivated by economics: through this lawsuit, appellants hope to avoid the disruption of trade relationships that depend on access to the Arab states. However, they advance three arguments for defining their speech as noncommercial.
 
 
 4
 First, the appellants argue that each question on the boycott questionnaire is implicitly an allegation that they have engaged in conduct or maintained relationships contrary to the Arabs' boycott principles. They assert that they have a right to answer the questionnaires in an effort to promote the truth about their business relationships. Thus, the appellants contend, their proposed answers are not "related solely to the interests of the speaker and its audience." However, the appellants' interest in disseminating truthful information cannot be distinguished in this instance from their economic interests. We do not understand appellants to be arguing that they would be interested in answering the questionnaires if truthful answers would result in the imposition of economic sanctions. Rather, their interest is in maintaining their advantageous commercial relationships, and any interest in promoting truth is directly proportional to the economic result it would achieve.
 
 
 5
 The appellants next argue that their proposed communications are attempts to influence the political decisions of a sovereign government, and as such should be fully protected. The appellants reason that the questionnaires are sent to companies by the Arabs in an attempt to enforce their economic boycott of Israel. The decision to boycott Israel is itself a political decision, as is the decision to blacklist those who do not comply with boycott principles. Therefore, the appellants argue, their answers to the questionnaires should be viewed as attempts to influence political decision-making.
 
 
 6
 Despite appellants' attempts to color their communications with a protected interest in political speech, this argument must also fail. The appellants are free to communicate their views about the relative merits of the Arabs' political decisions directly to the Arabs if they choose, so long as in doing so they do not furnish information about business relationships with boycotted countries or blacklisted persons in violation of the Act. However, the appellants do not seek to answer the questionnaire in order to influence the Arabs' decision to conduct or enforce a trade boycott with Israel. The Arabs' policy in conducting their boycott is irrelevant to appellants' answers. They wish through their answers only to show that the boycott's sanctions should not be applied to them, because they have not violated its terms.
 
 
 7
 Finally, the appellants argue that the presence of economic motivation alone is not enough to show that speech is commercial. We need not disagree, but it does not follow, of course, that all economically-motivated speech is fully protected noncommercial speech. The commercial speech doctrine was created to afford a measure of First Amendment protection to speech, such as appellants', pertaining to traditionally-regulated commercial activity. The hallmark of commercial speech is that it pertains to commercial transactions, whether those proposed through product advertising, as in Virginia State Board of Pharmacy, supra, or facilitated through the use of a trademark, as in Friedman v. Rogers, 440 U.S. 1, 99 S.Ct. 887, 59 L.Ed.2d 100 (1979), or implicated in some other manner. The Supreme Court has stated:
 
 
 8
 Expression concerning purely commercial transactions has come within the ambit of [the First] Amendment's protection only recently. In rejecting the notion that such speech "is wholly outside the protection of the First Amendment," ... we were careful not to hold "that it is wholly undifferentiable from other forms" of speech .... We have not discarded the "common-sense" distinction between speech proposing a commercial transaction, which occurs in an area traditionally subject to government regulation, and other varieties of speech.
 
 
 9
 Ohralik v. Ohio State Bar Ass'n, 436 U.S. 447, 455-56, 98 S.Ct. 1912, 1918, 56 L.Ed.2d 444 (1978) (citations omitted). The appellants' proposed answers to boycott questionnaires would serve only to allow appellants to continue to maintain commercial dealings with the Arab world. The government has traditionally regulated the area of international trade. Applying the common-sense distinction articulated in Ohralik, we hold that the appellants' proposed communications are commercial speech.
 
 III.
 
 10
 For the reasons ably expressed by Judge Gordon in his opinion, and for the reasons stated above, the judgments of the district courts are affirmed.
 
 
 
 *
 The Honorable William J. Campbell, Senior District Judge for the Northern District of Illinois, sitting by designation