684 S.E.2d 560

In the Matter of ANONYMOUS MEMBER OF the
SOUTH CAROLINA BAR, Respondent.

No. 26732.

Supreme Court of South Carolina.

Heard Sept. 2, 2009.
Decided Oct. 12, 2009.

Lesley M. Coggiola, Disciplinary Counsel, and Barbara M. Seymour, Deputy Disciplinary Counsel, of Columbia, for Office of Disciplinary Counsel.

Clayton Monroe Custer, of Greenville and Desa Ballard, of West Columbia, for Respondent.

PER CURIAM.

This is an attorney disciplinary matter involving a complaint filed against Respondent by an "anonymous member" of the South Carolina Bar for broadcasting an allegedly misleading television advertisement. The Commission on Lawyer Conduct filed formal charges against Respondent. Respondent filed an Answer in which he denied the alleged misconduct. Following a hearing, a Hearing Panel of the Commission on Lawyer Conduct ("the Panel") concluded that Respondent's advertisement was "neither inherently misleading nor actually misleading." As a result, the Panel recommended the dismissal of the formal charges against Respondent. The Office of Disciplinary Counsel ("the ODC") appeals the Panel's recommendation. We agree with the Panel's recommendation and dismiss the formal charges against Respondent.

## FACTUAL/PROCEDURAL HISTORY

Respondent, who has been licensed to practice law in South Carolina since 1995, is the managing member of a law firm located in Greenville.[1] Members of the firm primarily represent victims in personal injury and worker's compensation cases.

In December 2003, Respondent began airing a television advertisement to promote his legal services to potential clients who suffered on-the-job injuries. Respondent appeared in the advertisement and recited the following:

It's not your fault you were hurt on the job, but I know you're afraid to file a job injury claim. You're afraid your boss won't believe you're really hurt—or worse, that you'll be fired. We'll protect you against these threats—these accusations—and work to protect your job. I'm not an actor, I'm a lawyer. I'm [Anonymous]. Call me and we'll get you the benefits you deserve. The [Law] Firm.

On September 20, 2006, an "anonymous member" of the South Carolina Bar filed a complaint against Respondent with the ODC regarding the "Job Injury" advertisement. The Complainant contended the advertisement was misleading in that it created the false impression that by retaining Respon-

---

1. Respondent is also licensed and operates another office in Virginia.

dent an injured employee would not lose his or her job by filing a worker's compensation claim.

Following an investigation by the Commission on Lawyer Conduct, the ODC filed formal charges against Respondent. The ODC alleged Respondent violated the following Rules of Professional Conduct, Rule 407, SCACR: Rule 7.1(a) and Rule 7.1(b).[2]

Respondent filed a response to the ODC's formal charges in which he denied the alleged misconduct and raised constitutional challenges to the cited Rules of Professional Conduct.

On January 13, 2009, the Panel convened to hear evidence and arguments regarding the formal charges against Respondent.

Prior to this hearing, the Commission Chair and counsel for both parties agreed that expert opinions were inadmissible as to whether the Respondent's advertisement was misleading given this question presented an issue of law.

Based in part on this ruling, Respondent's counsel presented a motion *in limine* to exclude certain evidence that the ODC intended to introduce. Specifically, counsel sought to exclude the results of a market survey conducted on behalf of the ODC by Market Search, a market study company based in Columbia.[3]

Pursuant to a request by the ODC in March 2008, Market Search conducted a study to determine "the degree to which

---

2. These rules provide:

 A lawyer shall not make false, misleading, deceptive, or unfair communications about the lawyer or the lawyer's services. A communication violates this rule if it:
 (a) contains a material misrepresentation of fact or law, or omits a fact necessary to make the statement considered as a whole not materially misleading;
 (b) is likely to create an unjustified expectation about results the lawyer can achieve, or states or implies that the lawyer can achieve results by means that violate the Rules of Professional Conduct or other law.

 Rule 7.1(a), (b), RPC, Rule 407, SCACR.

3. After the Investigative Panel for the Commission on Lawyer Conduct determined that Respondent's advertisement was inherently misleading, it authorized the ODC to engage Market Search to conduct a study evaluating Respondent's advertisement.

[Respondent's] ad 'creates an unjustified expectation about results the lawyer can achieve, or states or implies that the lawyer can achieve results by means that violate the Rules of Professional Conduct or other law.'" The intent of the study was to determine whether Respondent's advertisement created an unjustified expectation that a claimant would not be fired from his or her job if they filed a worker's compensation claim.

During the study, thirty participants selected by Market Search compared Respondent's "Job Injury" advertisement with four other televised attorney advertisements. Respondent was featured in two of the five advertisements. The study was conducted by having the thirty participants individually view the five advertisements and then rate on a scale of 1 to 5 whether each advertisement addressed a specific theme or statement that was created by Market Search. Although the survey included multiple questions, the two most pertinent questions were:

> For this process, please use a 5–point scale, where 1 means you would definitely not expect this based on the ad and 5 means you definitely would expect it based on the ad.
>
> 5(g). This law firm will protect you from getting fired if you hire them.
>
> 5(k). This law firm will protect you from threats if you hire them.

Even though all of the participants indicated to some extent that each of the five advertisements caused them to believe the advertising law firm could protect them from losing their job, most of the survey participants believed Respondent's "Job Injury" advertisement conveyed that message to them more than the other advertisements.

As the basis for the motion *in limine*, Respondent's counsel initially argued that the purchase of the market study was outside the scope of authority of the Commission on Lawyer Conduct, the Investigative Panel, and the ODC. In the alternative, counsel asserted the results of the market research should be excluded because, absent the previously-excluded expert testimony, the study consisted only of inadmissible hearsay of the study participants.

After hearing arguments from counsel, the Panel reserved the right to rule on the motion and permitted the ODC to present evidence regarding the Market Search study.

Prior to the presentation of the ODC's case, the parties stipulated to the following: (1) there are statutory remedies available for a person in South Carolina who is fired in retaliation for filing a worker's compensation claim,[4] and (2) the parties' expert witnesses could not give an opinion as to whether or not the Respondent's advertisement is misleading.

During its case, the ODC offered the testimony of Graceanne Cole, the Vice President of Research for Market Search who orchestrated the study. Cole, the employee of Market Search who composed the questionnaires and conducted the interviews for the survey, was qualified as an expert witness in the area of market research. Cole explained the methodology of the study and chronicled a significant number of the participants' responses.

On cross-examination, Cole admitted that the study was not statistically reliable given the small sample size of participants. Cole testified that normally a study consisted of at least one hundred participants. She further acknowledged Respondent's advertisement was the only one amongst the five that referenced anything about protecting a claimant's job. In conjunction, she also conceded that some participants had the expectation that the advertising law firm would protect their job even in the absence of language to that effect.

Respondent offered the testimony of Dr. Bryan E. Denham, a Clemson University professor in the Department of Communication Studies. Denham, who was qualified as an expert in

---

4. Section 41–1–80 of the South Carolina Code provides in relevant part:
 No employer may discharge or demote any employee because the employee has instituted or caused to be instituted, in good faith, any proceeding under the South Carolina Workers' Compensation Law (Title 42 of the 1976 Code), or has testified or is about to testify in any such proceeding.
 Any employer who violates any provision of this section is liable in a civil action for lost wages suffered by an employee as a result of the violation, and an employee discharged or demoted in violation of this section is entitled to be reinstated to his former position. The burden of proof is upon the employee.
 S.C.Code Ann. § 41–1–80 (Supp.2008).

communications and applied statistics, reviewed the five advertisements as well as the questionnaires and final report produced by the Market Search study. Based on his assessment, Denham criticized the results of the study given: (1) the small sample size; (2) the participants were "self-selected" from a database and, thus, not truly representative of the general population; (3) two of the five advertisements involved the Respondent; (4) the participants permitted Cole to write down their responses; and (5) each of the five advertisements had different main points in that they all did not discuss employment issues.

Respondent was the final witness to testify. Respondent specifically addressed the advertisement in question. Respondent explained that he wrote the advertisement after speaking with other attorneys about the potential issues that arise with job-injury claims. He characterized the portion of the advertisement indicating that his firm would "work to protect" a claimant's job as "special wording." Respondent believed the advertisement was truthful in that his firm did work "to protect the jobs of its clients" even though he could not guarantee that the clients would not lose their jobs if they hired Respondent's firm.

After hearing arguments of counsel, the Panel issued an oral ruling in which it found Respondent's advertisement was not inherently or actually misleading. Although the Panel considered the Market Search study results, it noted that the ruling was "really not based on the survey."

On March 12, 2009, the Panel issued a written report in which it concluded that Respondent did not violate Rule 7.1(a) or 7.1(b). In reaching this conclusion, the Panel found: (1) there was no credible evidence that any member of the public was misled by Respondent's advertisement, and (2) the advertisement was "neither actually nor inherently misleading." In light of this decision, the Panel declined to rule on the constitutional and procedural objections raised by Respondent. Ultimately, the Panel recommended the dismissal of the formal charges against Respondent.

The ODC appeals from the Panel's recommendation.

## DISCUSSION

 The ODC contends the Panel's finding that Respondent's advertisement is not misleading is contrary to the evidence presented at the hearing. In support of this contention, the ODC lists the impressions of several Market Search participants who viewed Respondent's advertisement.[5] Based on these responses, the ODC claims that "there is a substantial likelihood that viewers will formulate the specific conclusion that Respondent can guarantee job protection." Because Respondent admitted that he could not guarantee that an injured employee would not be fired for filing a worker's compensation claim, the ODC argues the advertisement as a whole is actually misleading in that it gives the incorrect impression that a worker's compensation claimant would not be fired if Respondent was retained to pursue the claim.

Even if found not to be actually misleading, the ODC asserts the Panel erred in concluding the advertisement was not inherently misleading. The ODC avers that inherent in the advertisement is the message that injured workers will not be fired if they retain Respondent. The ODC explains that the advertisement omits certain information which would inform the public that, despite statutory remedies for an employee wrongfully terminated in retaliation for filing a worker's compensation claim, the Respondent cannot prevent the termination.

 "This Court has the sole authority to discipline attorneys and to decide the appropriate sanction after a thorough review of the record." *In the Matter of Thompson,* 343 S.C. 1, 10, 539 S.E.2d 396, 401 (2000). "Although this Court is not bound by the findings of the Panel and Committee, these findings are entitled to great weight, particularly when the inferences to be drawn from the testimony depend on the credibility of the witnesses." *In the Matter of Marshall,* 331 S.C. 514, 519, 498 S.E.2d 869, 871 (1998). "However, this Court may make its own findings of fact and conclusions of law." Id. Furthermore, a disciplinary violation must be prov-

---

**5.** Several participants indicated they believed Respondent could "basically guarantee you that you will not lose your job" if you file a claim or that you would "not have to worry about losing your job if you contact [Respondent]."

en by clear and convincing evidence. *In the Matter of Greene*, 371 S.C. 207, 216, 638 S.E.2d 677, 682 (2006); see Rule 8, RLDE, Rule 413, SCACR ("Charges of misconduct or incapacity shall be established by clear and convincing evidence, and the burden of proof of the charges shall be on the disciplinary counsel.").

As a threshold matter, there is no dispute that attorney advertisements are presumptively commercially-protected speech. *Bates v. State Bar of Arizona*, 433 U.S. 350, 383–84, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977) (holding that First Amendment protection extended to "truthful" advertising of "routine" legal services by attorneys and, thus, "may not be subjected to blanket suppression").

Because this constitutional protection is not without limitation, a challenge to an attorney advertisement involves a determination of whether the advertisement is false or misleading. As the United States Supreme Court emphasized in *In re R.M.J.*, 455 U.S. 191, 102 S.Ct. 929, 71 L.Ed.2d 64 (1982):

> Truthful advertising related to lawful activities is entitled to the protections of the First Amendment. But when the particular content or method of the advertising suggests that it is inherently misleading or when experience has proven that in fact such advertising is subject to abuse, the States may impose appropriate restrictions. Misleading advertising may be prohibited entirely. But the States may not place an absolute prohibition on certain types of potentially misleading information, e.g., a listing of areas of practice, if the information may also be presented in a way that is not deceptive.

*Id.* at 203, 102 S.Ct. 929; see *Zauderer v. Office of Disciplinary Counsel of the Supreme Court of Ohio*, 471 U.S. 626, 638, 105 S.Ct. 2265, 85 L.Ed.2d 652 (1985) (noting that the State may "prevent the dissemination of commercial speech that is false, deceptive, or misleading"); *In the Matter of Pavilack*, 327 S.C. 6, 7 n. 1, 488 S.E.2d 309, 310 n. 1 (1997) (recognizing that the State may freely regulate commercial speech which concerns unlawful activity or is misleading).[6] However,

---

6. Notably, Rule 7.2 of our state Rules of Professional Conduct specifically addresses the benefits of advertising but also cautions against the

"[e]ven when a communication is not misleading, the State retains some authority to regulate. But the State must assert a substantial interest and the interference with speech must be in proportion to the interest served." *In re R.M.J.*, 455 U.S. at 203, 102 S.Ct. 929.

In view of these constitutional parameters, the Court must determine whether Respondent's advertisement was misleading.

Because our case law does not provide definitive guidance for the analysis of the issue presented in this case, particularly the definition of "misleading," a review of the relevant comments to Rule 7.1 is instructive. These Comments provide in pertinent part:

■ This Rule governs all communications about a lawyer's services, including advertising permitted by Rule 7.2. Whatever means are used to make known a lawyer's services, statements about them must be truthful. . . .

■ Truthful statements that are misleading are also prohibited by this Rule. A truthful statement is misleading if it omits a fact necessary to make the lawyer's communication considered as a whole not materially misleading. A truthful statement is also misleading if there is a substantial likelihood that it will lead a reasonable person to formulate a specific conclusion about the lawyer or the lawyer's services for which there is no reasonable factual foundation.

Rule 7.1, RPC, Rule 407, SCACR, cmts. 1, 2.

Applying Rule 7.1 in its entirety to the facts of the instant case, we agree with the Panel's conclusion that Respondent's advertisement was not misleading.[7]

At the outset, there is no evidence that any member of the public was misled when Respondent aired his television adver-

---

risk of misleading practices which would result in regulation and disciplinary action. *See* Rule 7.2, RPC, Rule 407, SCACR, cmt. 1 ("The interest in expanding public information about legal services ought to prevail over considerations of tradition. Nevertheless, advertising by lawyers entails the risk of practices that are misleading or over-reaching.").

7. Because there is no allegation that Respondent's advertisement was false, we confine our analysis to a determination of whether the advertisement was misleading.

tisement. Moreover, we find the results of the Market Search study are suspect and do not definitively establish that the advertisement was misleading.

The sample group was smaller than normally used for such a study and, in turn, may not have been statistically reliable. The study had a 20% margin of error. The participants were shown a total of five attorney advertisements, of which two were produced by Respondent. This undoubtedly focused the participants' attention more keenly on the Respondent's advertisements. Respondent's advertisement was the only one of the five that referenced anything regarding a client's job. The questionnaires were also worded in a way that elicited the desired response from participants.

In the absence of any reliable data that the advertisement was misleading, the determination of this issue requires an analysis of the text of the advertisement in conjunction with Rules 7.1(a) and 7.1(b), RPC, and the related Comments. See *Zauderer*, 471 U.S. at 652, 105 S.Ct. 2265 (noting that a State need not "conduct a survey of the ... public before it [may] determine that the [advertisement] had a tendency to mislead" when "the possibility of deception" is self-evident (citation omitted)).

We find the text of the advertisement does not: (1) contain a "material misrepresentation," or (2) operate to "create an unjustified expectation" about the results Respondent could achieve for an injured worker.

In discussing the advertisement, Respondent testified he was truthful in his representation that he would "work to protect" an injured client's job if a worker's compensation claim was filed. This broad statement did not imply that Respondent could guarantee or ensure that a client would not lose his job. Instead, it was merely a statement of Respondent's role as an advocate on behalf of a client. Within this advocacy role, Respondent appeared to convey that he would use whatever means, including statutory remedies, which were available to guard against a client's loss of employment. Accordingly, we hold the ODC failed to prove by clear and convincing evidence that Respondent's advertisement violated either Rule 7.1(a) or Rule 7.1(b).

Based on the foregoing, we dismiss the formal charges against Respondent.

**CHARGES DISMISSED.**

TOAL, C.J., WALLER, PLEICONES, BEATTY and KITTREDGE, JJ., concur.