ALEXANDER, J.,
dissenting.
[¶ 37] Today the Court holds that the First Amendment to the United States Constitution may, if a judge agrees, be applied to bar municipalities from prohibiting their employees from being a candidate to hold a second position in the same municipality that may create a conflict of interest between the employee’s obligations as a political employee in one position and the employee’s obligations as a nonpolitical employee in the other position. From that holding, I respectfully dissent.
[¶ 38] The Court has comprehensively addressed the federal and state precedents on federal, state, and local government employees’ rights to freedom of expression and the extent to which government may, as a condition of employment, limit those rights by prohibiting those who already hold one office from, seeking and holding a second office with the same government entity. The Court correctly observes, citing a recent Eleventh Circuit opinion, that the issue of constitutional protections for a government employee seeking to become a candidate for a second government office is a “legal morass.” Court’s Opinion ¶ 9. See Randall v. Scott, 610 F.3d 701, 710 (11th Cir.2010) (“Precedent in the area of constitutional protection for candidacy can be best described as a legal morass.”); Matters v. Estes, 2013 WL 2403663, at *3 (N.D.N.Y. May 31, 2013) (“The extent of a public employee’s right to run for public office is not clearly established.”).
[¶ 39] Unfortunately, after recognizing that the issue of constitutional protections for a public employee’s candidacy for a second office is a “legal morass,” Court’s Opinion ¶ 9, the Court then analyzes the issue as if it were a public employees free speech case, such as United States v. Nat’l Treasury Errvps. Union, 513 U.S. 454, 115 S.Ct. 1003, 130 L.Ed.2d 964 (1995), and In re R.M.J., 455 U.S. 191, 102 S.Ct. 929, 71 L.Ed.2d 64 (1982), subjecting the candidacy restrictions to something like the strict-scrutiny analysis that is applied to speech restrictions to shift to the City the burden of justifying its prohibitions on city employees seeking one city office while they hold another city office. Court’s Opinion ¶¶ 23-34.
[¶ 40] The only legal issue to be adjudicated is the plaintiffs’ 42 U.S.C.A. § 1983 (West, Westlaw through P.L. 113-22) claim that the First Amendment to the United States Constitution is violated by the City’s prohibition on employees holding nonpolitical positions in City government from becoming a candidate for a political position in City government. Accordingly, we may look to First Amendment precedent addressing similar restrictions imposed on state and federal employees to evaluate the validity of the restrictions in this case.
[¶ 41] Applying those precedents, the Court generally vacates the trial court’s injunction barring the City from enforcing its prohibition of its nonpolitical employees from seeking and holding a second, political office in the City. In support of generally vacating the injunction, the Court notes that although the employees agreed that the City could prohibit some employees from running for the School Board or other elective City offices, the employees “offered no , principled dividing line to separate employees who could lawfully be barred from running from those who could not.” Court’s Opinion ¶ 36.
[¶ 42] But then the Court purports to divine the dividing line that the employees themselves failed to identify and decides *361 that the prohibition on employees seeking and holding two offices, proper as to all other City employees, is somehow improper as to the two employee-plaintiffs. Rather than establishing a specific rule of law to provide reasoned guidance to state and local governments, and their employees, on whether an employee holding one office may retain that office while seeking and holding another office within the same governmental unit, the Court leaves the issue to an after-the-fact decision by a court — a decision upon which two judicial fact-finders could reach different results, and a decision that likely would not be final until long after the election in which an individual sought to be a candidate. See Court’s Opinion ¶ 36.
[¶ 43] Holding that this important issue of municipal governance — whether municipal employees, in the face of a municipal policy prohibiting it, may seek and hold two municipal offices at once — is a factual decision left to a court in each instance, fails to provide the guidance that appellate courts should provide in addressing important public policy questions.
[¶ 44] If this case were about plaintiffs’ nonpartisan pamphleteering at the Maine Mall, or running for the School Board in Scarborough, on the employee’s free time, of course, I would agree with the Court that the City could not prevent such activity by its employees. But this case is about a municipality’s capacity to prevent each of its employees from engaging, on City time, in a blatant conflict of interest between the City department, employing the employee and another City department, the most expensive department in City government, in which the employee seeks to be the master.
[¶ 45] The State properly prohibits its classified employees from running for or serving in the Maine Legislature, preventing conflicts between the budgeting, policy, and priority setting interests of the two positions. See 5 M.R.S. § 7056-A(3) (2012). The State properly prohibits its classified employees from advocating before the Legislature for the interests of, or contracting with, themselves or any entity which may result in a benefit to themselves or any entity in which they have a substantial financial interest. 5 M.R.S. §§ 18, 18-A (2012). These restrictions are important to preserving both the appearance and the reality of integrity in State government operations.. To promote both the appearance and the reality of integrity in City government operations, the City can impose similar requirements on its nonpolitical, classified employees.
[¶ 46] Karen Callaghan is an employee of the Library Department. The Library Department’s budget needs and priorities directly compete with and are affected by budgeting decisions and priorities that may be demanded by the School Board. Further, the Library Department’s and the School Board’s interests may conflict on issues such as intellectual property acquisitions and access, use of one’s facilities by the other, and the role of the educational services provided by each in the community.
[¶ 47] Burton Edwards is' an employee of the Parks and Recreation Department.[10] The Parks and Recreation Department’s budget needs and priorities directly compete with and are- affected by budgeting decisions and priorities that may be de *362 manded by the School Board. In addition, the Parks and Recreation Department’s and the School Board’s interests may conflict on issues such as maintenance priorities (whose grass gets mowed first) and proper and joint uses of fields, playgrounds, tennis courts, and the like.
[¶48] Further, the employees’ status as department employees and School Board executives and legislators can create direct personal conflicts when considering collective bargaining agreements and employee discipline practices, and deciding issues such as the proper scope of and municipal contributions to employee benefits, health insurance, and retirement plans. The issue of government contributions to employee health and retirement benefits is perhaps the most controversial and costly issue facing state and local governments today. Any person who is an employee, in one municipal department and an executive and legislator in another municipal department is certain to have a conflict-of-interest and obligations whenever these issues have to be addressed.
[¶49] The Court’s opinion that the City cannot prevent these particular employees from seeking and holding two conflicting positions within City government is flawed in two significant ways. First, it gives short shrift to the conflict of interest concerns addressed by the City policy, although adoption and enforcement of similar restrictions by the State and federal governments, acknowledged by the Court, demonstrate that such policies are indeed a legitimate governmental interest to be respected in constitutionality analysis.[11] See Court’s Opinion ¶ 32.
[¶ 50] Second, despite acknowledging that there is no “fundamental constitutional right” to run for a second municipal office, and that the strict-scrutiny burden-shifting analysis does not apply, the Court fails to give the City’s policy the benefit of the doubt to which it is entitled under our standards of review for constitutional claims made against municipal ordinances and policies implementing those ordinances. See Court’s Opinion ¶ 10. When the constitutionality of a local ordinance is challenged, we have said that we will initially presume that the ordinance is constitutional. Fitanides v. City of Saco, 2004 ME 32, ¶ 10, 843 A.2d 8. Accordingly, the challenger has the burden of proof to demonstrate that an ordinance is unconstitutional or is being applied in an unconstitutional manner. Quiland, Inc. v. Wells Sanitary Dist., 2006 ME 113, ¶ 16, 905 A.2d 806.
[¶ 51] The Court’s opinion places the burden on the City to justify its restrictions, but that is not where the burden should lie. Placing the burden on the City is directly contrary to our precedents stating that when the constitutionality of an ordinance is challenged, we initially presume that the ordinance is not violative of the Constitution until the plaintiff makes a case that the ordinance or government action implementing the ordinance is unconstitutional. See Fitanides, 2004 ME 32, ¶ 10, 843 A.2d 8.
[¶ 52] The Court has acknowledged that the City could impose its restrictions on the City’s other classified employees, and can bar all its classified employees from running for the City Council. Because there is no rational basis for distinguishing between treatment of candidacy for the City Council and candidacy for the *363 School Board, which controls the largest budget of any City agency, I would hold that the plaintiffs have failed to meet their burden of demonstrating that the-City restriction does not protect a legitimate governmental interest.
[¶53] The constitutional propriety of restricting municipal employees from holding two offices within the same municipality is established by the Court’s opinion. With constitutional propriety established, the courts have no business getting into the minutiae of examining whether this legitimate restriction should be applied to candidacy of particular employees for the City Council or to the candidacy of some employees, but not other employees, for the School Board. There is no dispute about the facts here or about the serious conflicts of interest that would be created if, contrary to municipal policy, employees of municipal departments are permitted to run for the School Board. Accordingly, I would vacate the judgment of the Superior Court, and remand with direction to deny the plaintiffs’ claims for relief.

. The Court’s opinion indicates that Burton Edwards works for the City approximately four hours per week, but its reasoning applies equally to employees working four, or fourteen, or forty hours per week. I agree that fer a case such as this, the important freedom of expression and governmental integrity principles addressed by the Court should not be dependent on the number of hours per week a person works.

. The Court attempts to distinguish the well accepted prohibitions on State employees running for State elected offices by asserting that the State prohibitions are limited to partisan elections, but the State conflict of inter-estlaws, 5 M.R.S. §§ 18, 18-A (2012), contain no such limitation. They apply to all conflicts of interest, not just those that involve participation in partisan elections. See 5 M.R.S. § 18-A(2).